379 So.2d 321 (1980)
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY
v.
J.W. ROBERTS.
No. 51474.
Supreme Court of Mississippi.
January 30, 1980.
Bryan, Nelson, Allen, Schroeder & Backstrom, John W. Chapman, Pascagoula, for appellant.
Cumbest & Cumbest, John L. Hunter, Pascagoula, for appellee.
Before PATTERSON, C.J., and BROOM and COFER, JJ.
PATTERSON, Chief Justice, for the Court:
In the Circuit Court of Jackson County, J.W. Roberts received as an award for breach of an insurance contract $20,000 punitive damages and $5200 actual damages in excess of $4000 offered him before trial for the value of his automobile. Roberts' insurer appeals. We reverse and remand for an award limited to the actual cash value of the automobile at the time of the accident.
On March 20, 1974, the son of J.W. Roberts was involved in an accident while driving his father's 1974 Oldsmobile Cutlass automobile. A truck of Kitchenaids, Inc. totally demolished the automobile at the intersection of Highway 90 and Chicot Road.
On March 21, 1974, Oren Haddock, a claim adjuster of the insurer, learned of the accident and began an investigation. Prior to the March 20 accident, Haddock had been, and continued, investigating for State Farm some claims of J.W. Roberts arising from an accident of January 30, 1974, which also involved the appellee's son.
The appellee employed attorney Frank J. Hammond to represent him concerning the January 30 accident and again retained him concerning the March 20 accident. Attorney Hammond and adjuster Haddock on several occasions discussed both accidents. Hammond testified that from the time of the March 20 accident until just before trial neither Haddock nor any representative of the insurer had ever "made an offer of settlement for this automobile to me."
The record reveals that during negotiations to settle the automobile claim, Hammond insisted that the insurer pay the amount owed by Roberts to the Merchants & Marine Bank on the car. The evidence *322 discloses this amount exceeded the policy coverage. The policy insured the actual cash value of the automobile while the amount owed the bank exceeded that sum by about $1000.
On cross-examination appellee Roberts was asked if he knew of an offer communicated by the insurer to attorney Hammond:
Q. Let me refresh your memory. Do you remember giving a deposition back in March of this year, and Mr. Chapman asked you on Page 33 "Did Mr. Hammond ever tell you that State Farm had offered to pay you any money in regard to the car?" Answer  "Yes, but it was not like near enough." Question  "Did he tell you how much they offered to pay you?" Answer  "Now, off the record I can't say for sure, but it seems to me like it was around in the amount of $3700 and there was $4700 owed on it." Do you remember making that statement under oath in the offices of your attorneys on March the 21st?
A. Right; right.
Q. Would you like to contradict that or confirm that here today?
A. I would like to confirm that.
The file lay dormant, except for a letter of May 9, 1974, from attorney Hammond to the insurer concerning another claim and containing the statement, "At your convenience, I would appreciate your calling by my office to discuss the various matters that we have pending in connection with Mr. Roberts." In 1976 Hammond suffered a heart attack, and time passed with nothing being done about the claim, either by the insurer or the insured. Eventually, with Hammond's consent, Roberts sought representation from other attorneys, and this suit followed.
The appellant's several assignments of error may be disposed of by a resolution of the cardinal issue of whether the evidence establishes an independent tort, a prerequisite to an award of punitive damages. We find the evidence insufficient as a matter of law to establish this essential element. We therefore hold the trial court erred in granting the punitive damages instruction. A research of the record reveals nothing other than a legitimate pocketbook dispute between the parties as to the amount that was due for the demolished automobile, one claiming the sum owed the bank on the automobile and the other admitting coverage in the amount of its policy, specifically, the actual cash value of the automobile. In our judgment, these differences of opinion did not rise to the level of wanton, gross or intentional conduct in the nature of an independent tort. In the absence of such conduct, a punitive damages award cannot stand. Travelers Indemnity Co. v. Wetherbee, 368 So.2d 829 (Miss. 1979); Bellefonte Ins. Co. v. Griffin, 358 So.2d 387 (Miss. 1978); New Hampshire Ins. Co. v. Smith, 357 So.2d 119 (Miss. 1978); Standard Life Ins. Co. v. Indiana v. Veal, 354 So.2d 239 (Miss. 1978); Lincoln National Life Ins. Co. v. Crews, 341 So.2d 1321 (Miss. 1977); Progressive Casualty Ins. Co. v. Keys, 317 So.2d 396 (Miss. 1975); D.L. Fair Lbr. Co. v. Weems, 196 Miss. 201, 16 So.2d 770 (1944); Am. Ry. Express Co. v. Bailey, 142 Miss. 622, 107 So. 761 (1926); Hood v. Moffett, 109 Miss. 757, 69 So. 664 (1915); see also A Perspective Look at Punitive Damages in Mississippi, 1 Mississippi College L.Rev. 21 (1978).
We reverse and render as to the award of punitive and actual damages and remand for an award of the actual cash value of the automobile at the time of the accident as provided in the policy.
REVERSED AND RENDERED IN PART; REVERSED AND REMANDED IN PART.
SMITH and ROBERTSON, P. JJ., and SUGG, WALKER, BROOM, LEE, BOWLING and COFER, JJ., concur.