804 F.2d 1395
 R.V. TUTOR, Plaintiff-Appellee,
v.
RANGER INSURANCE COMPANY, Sovereign Marine and General
Insurance Company, Limited and Ranger Insurance
Managers, Inc., d/b/a Ranger-Allied
Underwriters, Defendants-Appellants.
 No. 86-4725.
 United States Court of Appeals,
Fifth Circuit.
 Dec. 3, 1986.
Rehearing Denied Jan. 23, 1987.
 
 Mitchell, McNutt, Bush, Lagrone & Sams, John S. Hill, Tupelo, Miss., for defendants-appellants.
 Ethridge, Grisham & Goza, Shelby D. Goza, Oxford, Miss., for Sovereign Marine and GE. Ins. Co.
 Cliff R. Easley, Jr., Bruce, Miss., for plaintiff-appellee.
 Appeal from the United States District Court for the Northern District of Mississippi.
 Before REAVLEY, RANDALL and DAVIS, Circuit Judges.
 PER CURIAM:
 
 
 1
 Ranger Insurance Company ("Ranger") appeals the district court's refusal to grant a directed verdict or a judgment notwithstanding the verdict on R.V. Tutor's claim for compensatory and punitive damages arising out of an alleged breach of an insurance contract. For the reasons that follow, we reverse in part.
 
 I.
 
 2
 On November 2, 1982, Tutor, as insured, entered into a contract for insurance with Ranger covering Tutor's 1980 Timberjack model 520 log skidder, a piece of heavy equipment used by Tutor in his logging business. Ranger was the general agent of Sovereign Marine and General Insurance Company ("Sovereign"), the riskholder under the insurance contract. The skidder was insured for a maximum of $55,000, but the liability under the policy was limited to the value of the skidder at the date of loss. The policy provided:
 
 
 3
 The company shall be liable only to the extent of actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss.
 
 
 4
 On November 8, 1982, Tutor's log skidder was destroyed by fire. Tutor reported this loss on November 9, 1982. Ranger contacted GAB Business Services, Inc. ("GAB"), a firm used by Ranger to evaluate claims, to investigate Tutor's claim and adjust the loss. On November 12, 1982, GAB sent Douglas Watson and Rick Carbaugh out to inspect the skidder. Watson determined the skidder to be a total loss. Tutor alleged that Watson asked Tutor to transport the skidder to a Timberjack dealer in Bruce, Mississippi, and promised to pay Tutor $2,500 for the transportation in the event that his insurance claim was not promptly settled. Carbaugh, a heavy equipment appraiser, after contacting equipment dealerships in Alabama, Florida, and Texas, estimated the value of the skidder at the time of loss to be $44,333.
 
 
 5
 During the investigation, Watson came across several factors which, at the time, seemed to cast doubt on the validity of Tutor's claim. Watson contacted the forestry department in Calhoun County, the county where Tutor did most of his business, and learned that the department had no record of a report from Tutor of the fire, although Tutor claimed to have reported the fire. Later it was determined that Tutor did report the fire to the forestry department of Lafayette County, an adjacent county in which the fire occurred. Further investigation disclosed that the skidder had previously been insured by another insurance agency, but that the prior insurance policy had lapsed on July 31, 1982, approximately 4 months prior to the time the Ranger insurance certificate was issued on November 8, 1982. For these reasons, Watson recommended to Ranger that it contact the previous insurance carrier to determine whether the loss had been reported to it, that it investigate Tutor's background and credibility, and that it investigate a previous fire loss to one of Tutor's skidders. Ranger requested that GAB continue to investigate the loss. After further investigation, GAB recommended to Ranger that the claim be paid.
 
 
 6
 Ranger authorized GAB to offer Tutor the initial appraisal amount, less the $1,000 deductible under the policy, and authorized GAB to take a proof of loss from Tutor. On March 22, 1983, slightly more than four months after the skidder was destroyed, GAB sent Tutor a proof of loss form, showing the $44,333 figure, less the $1,000 deductible, as the actual cash value of the skidder. Tutor, through his attorney, rejected this offer. Tutor returned the proof of loss form with the actual cash value changed to $54,333. Tutor also demanded $2,000 for transporting the skidder to the Timberjack dealer. In response, Ranger offered the same amount, but offered to let Tutor keep the burned skidder for its salvage value. Ranger also stated in this letter to Tutor's attorney that Tutor had failed to timely provide a proof of loss as required by the insurance contract, but indicated a willingness to continue negotiations to adjust Tutor's loss. Tutor also rejected this offer. Ranger replied that Tutor had not provided Ranger with any information that indicated that the cash value of the skidder was greater than the amount offered. Tutor's attorney wrote back and included an appraisal of the value of the skidder at $55,000, and stated that Tutor would not accept less than $55,000 plus interest, less the $1,000 deductible. Ranger then had the skidder reappraised at between $50,000 and $52,000. By this time, however, Tutor had filed suit in Mississippi state court.
 
 
 7
 Ranger and Sovereign removed the case to federal district court on the basis of diversity of citizenship. Tutor's complaint sought $54,000 in damages for the breach of the insurance contract, $2,500 in damages for the breach of the oral contract to transport the skidder, $25,000 in extra-contractual compensatory damages for lost business, and $1,000,000 in punitive damages for the alleged bad faith breach of the insurance contract. Ranger and Sovereign moved for a partial summary judgment on the issues of extra-contractual compensatory damages, punitive damages, and prejudgment interest, contending that Tutor could not recover these damages as a matter of law. The district court reserved ruling on this motion until after the trial.
 
 
 8
 The case was tried to a jury. After both sides rested, the defendants renewed the contentions in their prior motion for partial summary judgment, and moved the district court to direct a verdict for them on the issues of extra-contractual compensatory and punitive damages. The district court denied this motion, and sent the case to the jury. The jury returned a verdict in favor of Tutor. The jury awarded Tutor $56,000 in contractual damages, $92,800 in extra-contractual compensatory damages, and $100,000 in punitive damages. Ranger and Sovereign filed a motion for judgment notwithstanding the verdict on the issues of extra-contractual compensatory and punitive damages and, in the alternative, sought a remittitur or a new trial. The district court denied the defendants' motion for judgment n.o.v., but ordered a remittitur of the extra-contractual compensatory damages in the amount of $66,500, unless Tutor elected a new trial on the issue of damages. Ruling on the propriety of submitting the issue of punitive damages to the jury, the district court held that whether the delay of five months before the defendants made an initial offer of compensation on the claim constituted gross negligence or an independent tort presented a question of fact for the jury's resolution. Hence, the district court declined to interfere with the jury's award of punitive damages. Tutor did not inform the district court of his choice of a remittitur or a new trial.
 
 
 9
 On May 22, 1985, the defendants filed a notice of appeal, attempting to appeal from the district court's order denying their motion for judgment n.o.v., and Tutor filed a cross-appeal from the same order. Because there was as yet no appealable final order, this court dismissed the appeal for lack of jurisdiction. Tutor v. Ranger Ins. Co., 793 F.2d 1289 (5th Cir.1986). Meanwhile, on July 18, 1986, Tutor accepted the remittitur under protest. On August 21, 1986, the district court entered judgment, but the amount of damages awarded was erroneous. Hence, on September 3, 1986, the district court entered a corrected judgment, awarding Tutor $56,000 in contractual damages, $25,500 in compensatory damages, and $100,000 in punitive damages. Ranger appeals from this judgment, arguing that the district court erred in failing to grant its motions for a directed verdict and for judgment n.o.v. Before addressing these arguments, we will consider the appropriate standard of review.
 
 II.
 
 10
 Our standard of review of a district court's denial of a motion for a directed verdict or a judgment n.o.v. was established in the case of Boeing Co. v. Shipman, 411 F.2d 365 (5th Cir.1969) (en banc), wherein we stated:
 
 
 11
 On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence--not just that evidence which supports the non-mover's case--but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court believes that reasonable men could not arrive at a contrary verdict, granting of the motions is proper. On the other hand, if there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motions should be denied, and the case submitted to the jury. A mere scintilla of evidence is insufficient to present a question for the jury. The motions for directed verdict and judgment n.o.v. should not be decided by which side has the better of the case, nor should they be granted only when there is a complete absence of probative facts to support a jury verdict. There must be a conflict in substantial evidence to create a jury question.
 
 
 12
 Id. at 374-75; see also Merchants & Farmers State Bank v. Fidelity & Casualty Co., 791 F.2d 1141, 1144 (5th Cir.1986); Southwestern Sheet Metal Works, Inc. v. Semco Mfg., Inc., 788 F.2d 1144, 1146 (5th Cir.1986); Hicks v. United States, 787 F.2d 1018, 1019 (5th Cir.1986); Knight v. Texaco, Inc., 786 F.2d 1296, 1298 (5th Cir.1986). "The standard governing directed verdicts and judgments notwithstanding the verdict remains the same on appeal." Hinshaw v. Doffer, 785 F.2d 1260, 1263 (5th Cir.1986); see Metallurgical Indus., Inc. v. Fourtek, Inc., 790 F.2d 1195, 1199 (5th Cir.1986). In a diversity case, we apply the above federal standard of review to assess the sufficiency of the evidence in relation to the verdict, but we refer to state law to determine the kind of evidence that must be produced to support a verdict. Ayres v. Sears, Roebuck & Co., 789 F.2d 1173, 1175 (5th Cir.1986). Hence, in this diversity case we will apply the federal Boeing standard of review, but we will look to Mississippi law to determine the type of evidence that Tutor needed to produce to entitle him to go to the jury on the issues of extra-contractual compensatory and punitive damages. We turn, therefore, to an analysis of Mississippi law governing the availability of extra-contractual compensatory and punitive damages for the breach of insurance contracts.
 
 III.
 
 13
 Under Mississippi law, "[p]unitive damages are not recoverable for the breach of a contract unless such breach is attended by intentional wrong, insult, abuse or such gross negligence as to consist of an independent tort." Progressive Casualty Ins. Co. v. Keys, 317 So.2d 396, 398 (Miss.1975); see Employers Mut. Casualty Co. v. Tompkins, 490 So.2d 897, 906 (Miss.1986); Standard Life Ins. Co. v. Veal, 354 So.2d 239, 247 (Miss.1977); see also Henderson v. United States Fidelity & Guar. Co., 620 F.2d 530, 536 (5th Cir.), cert. denied, 449 U.S. 1034, 101 S.Ct. 608, 66 L.Ed.2d 495 (1980). In applying this rule in diversity cases arising under Mississippi law, this court has held that the relevant inquiry is whether the insurance company had a justifiable reason or arguable basis under Mississippi law for denying a valid claim. See, e.g., Vogel v. American Warranty Home Serv. Corp., 695 F.2d 877, 883 (5th Cir.1983); Black v. Fidelity & Guar. Ins. Underwriters, 582 F.2d 984, 990 (5th Cir.1978). This test has been approved by the Mississippi Supreme Court as a sound interpretation of Mississippi law. See Bankers Life & Casualty Co. v. Crenshaw, 483 So.2d 254, 271 (Miss.1985). In determining whether the insurance company had an arguable basis for refusing to pay the claim, "the evidence in each particular case will decide whether a punitive damage instruction must be granted or refused." Mississippi Farm Bureau Mut. Ins. Co. v. Todd, 492 So.2d 919, 933 (Miss.1986); State Farm Fire & Casualty Co. v. Simpson, 477 So.2d 242, 249 n. 2 (Miss.1985). In interpreting the terms "legitimate or arguable reason," the Mississippi Supreme Court has stated:
 
 
 14
 We are of the opinion that the term "legitimate or arguable reason," although spawning much comment in our cases and in briefs and arguments of counsel, is nothing more than an expression indicating the act or acts of the alleged tortfeasor do not rise to the heightened level of an independent tort. Additionally, the very term expresses the holding of this Court establishing a distinction between ordinary torts, the product of forgetfulness, oversight, or the like; and heightened torts, which are the product of gross, callous or wanton conduct, or, if intentional, are accompanied by fraud or deceit.
 
 
 15
 Simpson, 477 So.2d at 250. We note that this rule applies to claim denial cases, and that in the instant case, Ranger never denied the claim but instead only investigated the claim, determined it to be valid, disputed the valuation of the skidder and delayed payment while these issues were resolved. However, assuming that this rule applies to the breach of an insurance contract because of delay, we hold that under the facts of this case Tutor was not entitled to a jury instruction on punitive damages, and that the district court erred in refusing to grant Ranger's motions for a directed verdict and judgment n.o.v. on that issue. This is not to say that we think that Ranger's delay in settling the claim was in keeping with good business practices, or that the claim could not have been investigated more rapidly. We only hold that Ranger's actions, when viewed in the light most favorable to Tutor, did not rise to the level of gross negligence or an independent tort, and therefore did not create a jury issue on punitive damages.
 
 
 16
 Tutor makes much of the fact that Ranger, in its letter of April 19, 1983, implied that it might deny Tutor coverage because Tutor failed to furnish a proof of loss as required under the policy, when Ranger was aware that, under Mississippi law, it was required to furnish Tutor with a proof of loss form or waive its right to insist on one. We, however, disagree with Tutor's interpretation of the letter. We note that the letter went on to offer another settlement of Tutor's claim, and expressed a willingness to continue negotiations toward arriving at the proper valuation of the log skidder. We stress that Ranger never denied coverage under the policy, and we would be faced with a different case had Ranger denied coverage based upon Tutor's failure to furnish a proof of loss. Compare Employers Mut. Casualty Co. v. Tompkins, 490 So.2d 897 (Miss.1986) (reliance on exclusion clause in insurance contract previously held void as against public policy to deny claim entitled insured to punitive damages).
 
 
 17
 Finally, we also note that the Mississippi Supreme Court has been extremely reluctant to allow punitive damages in cases where the insurer did not deny coverage, but only disputed the amount of the claim or delayed payment. See, e.g., Aetna Casualty & Sur. Co. v. Day, 487 So.2d 830, 832-34 (Miss.1986) (no punitive damages in case of dispute in coverage and delay in payment); State Farm Mut. Auto. Ins. Co. v. Roberts, 379 So.2d 321, 322 (Miss.1980) (award of punitive damages improper when insurer legitimately disputes the amount due under the policy); see also Bellefonte Ins. Co. v. Griffin, 358 So.2d 387, 391 (Miss.1978) (dispute over method of determining amount due under the policy did not entitle insured to punitive damages). We think that this case initially involved a reasonable inquiry into the validity of the claim and a subsequent good faith dispute over the cash value of the log skidder. At the time that Ranger offered Tutor $44,333 in adjustment of his claim, that was the only appraisal figure that they had in their possession. When Tutor, through his attorney, submitted an alternative appraisal amount, Ranger took immediate steps to have the skidder reappraised. By this time, however, Tutor had already filed suit. We hold that the above facts, when viewed in the light most favorable to Tutor, are also insufficient to create a jury question on the issue of punitive damages.
 
 
 18
 Because we hold that the district court's judgment awarding punitive damages must be reversed, we are also compelled to reverse the award of extra-contractual compensatory damages. See Simpson, 477 So.2d at 253 (holding that since punitive damages instruction erroneous, award of extra-contractual compensatory damages and attorneys fees improper); Blue Cross & Blue Shield v. Campbell, 466 So.2d 833, 844 (Miss.1984) ("compensatory damage" instruction must be predicated upon the trial judge first finding no reasonably arguable basis to deny the claim); cf. Travelers Indem. Co. v. Wetherbee, 368 So.2d 829, 836 (Miss.1979).
 
 
 19
 Finally, we note that the jury awarded Tutor $56,000 in contractual damages, when the maximum liability under the policy was $54,000, $55,000 less the $1,000 deductible. We assume that the jury awarded the extra $2,000 in damages for the breach of the alleged oral contract to transport the skidder to the Timberjack dealer. However, since Ranger has not contested the amount of contractual damages, we decline to disturb this award of damages.[1]IV.
 
 
 20
 For the above reasons, the judgment of the district court is REVERSED, and this case is REMANDED for entry of judgment consistent with this opinion. Each party is to bear its own costs.
 
 
 
 [1]
 Tutor argues at length that the district court erred in ordering a remittitur of the extra-contractual compensatory damages awarded by the jury, but failed to file a notice of appeal from the district court's final judgment. Hence, we do not consider these arguments. We note, however, that even if Tutor had filed a timely notice of appeal, the remittitur issue would be moot because of our holding that the district court erred in awarding Tutor any extra-contractual compensatory damages