**James Truitt MAGEE, Plaintiff,**

v.

**SHEFFIELD INSURANCE COMPANY, et al., Defendants.**

Civ. A. No. H87–0089(R).

United States District Court, S.D. Mississippi, Hattiesburg Division.

Nov. 16, 1987.

Larry Buffington, Collins, Miss., Patrick Zachary, Zachary & Zachary, Hattiesburg, Miss., for plaintiff.

Frank D. Montague, Jr., Gray, Montague & Pittman, Hattiesburg, Miss., for defendants.

## MEMORANDUM OPINION

DAN M. RUSSELL, Jr., District Judge.

This cause having come before this Court on the Motion for Partial Summary Judgment filed by the defendants Sheffield Insurance Company and Brickell Insurance Agency, and the Court having examined said motion, together with briefs and exhibits submitted in support and response thereto, finds that for the reasons more fully set forth herein, the motion is well taken and should be granted.

### FACTS

On or about January 20, 1987, the plaintiff's Kenworth tractor-trailer rig, serial no. KWDN9X5BK189915, caught fire at the intersection of Highways 84 and 35 in Covington County, Mississippi, and was totally destroyed. The vehicle was insured by Sheffield Insurance Company (Sheffield) under policy no. SPD100070 issued to leased operators Nance and Collums, Inc. and Nance Truck Lines. Certificate No. 66 designated the plaintiff as the owner/insured of the vehicle with an insured value of $40,000.00, less a $1,000.00 deductible, for a term covering September 1, 1986 through September 1, 1987.

Before the insurance went into effect, the plaintiff received a letter dated August 22, 1986 from the Secretary of Brickell Insurance Agency (Brickell) explaining that "[t]he equipment (the vehicle in question) should be insured for its 'actual cash value' at the current retail market since that is the most you can recover from a claim." The letter further explained that the vehicle "should not be insured for more than

its actual cash value since there is no point in paying the premium needlessly and since it isn't proper to do so anyway."

On January 27, 1987, Michael F. Ware, an independent adjuster, completed a total loss evaluation wherein he determined that the actual cash value of the vehicle was $37,062.50. In his report submitted to J. Gordon Gains, Inc. on January 30, 1987, Mr. Ware stated that "[i]n our opinion, I believe the unit (the vehicle in question) would not bring over $34,000.00. I would recommend that we attempt to settle with the Insured on a gross figure of $32,000.00, less the deductible of $1,000.00. I will check further to see if we can locate another vehicle in order to point this out to the insured at the time of the settlement."

Mr. Ware's report also addresses the discrepancy between what he determined the actual cash value of the truck to be on January 27, 1987 and what he determined it to be on January 30, 1987 by stating that "I have enclosed a truck identification sheet and also a total loss evaluation sheet. The local market does show the ACV to be around $36,000.00. I feel this is slightly high. We were able to locate one since this total loss sheet was completed. The one located is a 1982 comparable truck. The selling price is $33,000.00 and does have more miles than that of the Insured."

On or before February 16, 1987, Sheffield offered the plaintiff $34,000.00, less the $1,000.00 deductible, in settlement of the claim. By letter dated February 16, 1987, plaintiff's counsel rejected the offer and demanded the policy amount of $40,-000.00 ($41,000.00 less the $1,000.00 deductible). By letter dated March 18, 1987, plaintiff's counsel again acknowledged Sheffield's offer of settlement for a net amount of $33,000.00 and again demanded the net policy limits of $40,000.00. On March 24, 1987, the plaintiff filed suit alleging *inter alia* tortious breach of contract and bad faith.

## LAW

The analysis of the issues presently before this Court must necessarily begin with the recent case of *Cherry v. Anthony, Gibbs, Sage,* 501 So.2d 416 (Miss.1987). In *Cherry* the policy of insurance provided coverage for a tractor-trailer rig which was totally destroyed by fire. The Cherrys sued claiming that the policy entitled them to be paid the face value of the policy regardless of the condition of the vehicle. The insurer argued that the face value was only a ceiling and that coverage was for the actual cash value of the truck. The Mississippi Supreme Court recognized that paragraph 2 of the Cherrys' policy directed that "[t]he limit of the Underwriter's liability ... is the amount insured stated in the Schedule *or the actual cash value of the vehicle whichever is less.*" [1] (Emphasis added) *Id.* at 418. The Court determined that "... the face value is to act as a ceiling; it does not irrevocably fix the amount to be awarded." *Id.* at 419. The Court went on to find that:

... it strains credulity to argue that the Cherrys could reasonably have expected an insurance company to pay them the face amount of an insurance policy regardless of the actual cash value of the item insured. Very few, if any, insurance companies would issue a policy on this basis. It is the general practice in the insurance industry to pay the actual cash value at the time of loss. R. Keeton, *Insurance Law,* § 3.9 (1971).

*Id.* at 419.

With respect to the issue of fraud, the Cherrys alleged that the agent falsely rep-

---

1. Paragraph 6 of the policy at issue states that:

    6. Loss. Determination. In the event of loss or damage under this insurance, the Company shall be liable only for the least of the following amounts:

    a. *the actual cash value of such covered automobile, or if loss is to a part thereof, the actual cash value of such part at the time of loss, or*

    b. what it would then cost to repair or replace such covered automobile or part thereof, with other of like kind and quality, with deduction for depreciation and/or betterment, or

    c. the limit of liability stated in the Declarations under the coverage afforded for the loss to such covered automobile;

    The Company's limit of liability, the lease of a, b, or c above, shall be reduced by:

    (i) the deductible applicable thereto, and

    (ii) the salvage value of such automobile, if applicable.

    (Emphasis added.)

resented to them that they would be paid the entire face amount on the policy in the event of a total loss. The Court found "... a complete failure of proof as to the issue of fraud" and noted that "... in Mississippi fraud must be shown by clear and convincing evidence." The Court also stated that "[i]t follows, of course, that without any proof of fraud or abuse the Cherrys were not entitled to an instruction on punitive damages." *Id.* at 420.

### A. Punitive Damages

Mississippi law directs that "punitive damages are not recoverable for the breach of a contract unless such breach is attended by intentional wrong, insult, abuse, or such gross negligence as to consist of an independent tort." *Progressive Casualty Ins. Co. v. Keys,* 317 So.2d 396, 398 (Miss. 1975); *see Employers Mut. Casualty Co. v. Tompkins,* 490 So.2d 897, 906 (Miss. 1986); *Standard Life Ins. Co. v. Veal,* 354 So.2d 239, 247 (Miss.1977). *See also Henderson v. United States Fidelity & Guar. Co.,* 620 F.2d 530, 536 (5th Cir.), *cert. denied,* 449 U.S. 1034, 101 S.Ct. 608, 66 L.Ed.2d 495 (1980). Application of the above requires a determination of whether or not the insurance company had a justifiable reason or arguable basis for *denying* a valid claim. *See e.g., Vogel v. American Warranty Home Serv. Corp.,* 695 F.2d 877, 883 (5th Cir.1983). In interpreting what a legitimate or arguable reason is, the Mississippi Supreme Court has stated:

> We are of the opinion that the term 'legitimate or arguable reason,' although spawning much comment in our cases and in briefs and arguments of counsel, is nothing more than an expression indicating the act or acts of the alleged tortfeasor do not rise to the heightened level of an independent tort. Additionally, the very term expresses the holding of this Court establishing a distinction between ordinary torts, the product of forgetfulness, oversight, or the like; and heightened torts, which are the product of gross, callous or wanton conduct, or, if intentional, are accompanied by fraud or deceit.

*State Farm Fire & Casualty Co. v. Simpson,* 477 So.2d 242, 250 (Miss.1985).

In *Tutor v. Ranger Insurance Company,* 804 F.2d 1395 (5th Cir.1986), the plaintiff's log skidder was destroyed by fire. The policy in effect provided maximum coverage of $55,000.00 and limited the liability to the value of the skidder at the date of loss. The Court examined prevailing Mississippi law concerning punitive damages and held that it was an error for the district court to allow the issue of punitive damages to go to the jury. The Court determined that "... Ranger never denied coverage under the policy, and we would be faced with a different case had Ranger denied coverage based upon Tutor's failure to furnish a proof of loss." (Citations omitted). *Id.* at 1399. The Court concluded that:

> ... the Mississippi Supreme Court has been extremely reluctant to allow punitive damages in cases where the insurer did not deny coverage, but only disputed the amount of the claim or delayed payment. *See, e.g., Aetna Casualty & Sur. Co. v. Day,* 487 So.2d 830, 832–34 (Miss. 1986) (no punitive damages in case of dispute in coverage and delay in payment); *State Farm Mut. Auto. Ins. Co. v. Roberts,* 379 So.2d 321, 322 (Miss.1980) (award of punitive damages improper when insurer legitimately disputes the amount due under the policy); *see also Bellefonte Ins. Co. v. Griffin,* 358 So.2d 387, 391 (Miss.1978) (dispute over method of determining amount due under the policy did not entitle insured to punitive damages). We think that this case initially involved a reasonable inquiry into the validity of the claim and a subsequent good faith dispute over the cash value of the log skidder. At the time that Ranger offered Tutor $44,333 in adjustment of his claim, that was the only appraisal figure that they had in their possession. When Tutor, through his attorney, submitted an alternative appraisal amount, Ranger took immediate steps to have the skidder reappraised. By this time, however, Tutor had already filed suit. We hold that the above facts, when viewed in the light most favorable to

Tutor, are also insufficient to create a jury question on the issue of punitive damages.

*Id.* at 1399.

### B. Summary Judgment

Summary judgment may only be granted if the record clearly shows that there is no genuine issue of material fact and that the moving party is entitled to summary judgment as a matter of law. *Dugas v. Travelers Insurance Co.*, 785 F.2d 550 (5th Cir. 1986). "If reasonable minds might differ on the resolution of any material fact or even on the inferences arising from undisputed facts, summary judgment must be denied." *Anthony v. Petroleum Helicopters, Inc.*, 693 F.2d 495, 496 (5th Cir.1982); *Impossible Electronics Techniques, Inc. v. Wackenhut Protective Systems, Inc.*, 669 F.2d 1026, 1031 (5th Cir.1982). A judge's function at the summary judgment stage is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2511 (1986).

As recently stated by the Fifth Circuit: An issue is genuine if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inferences in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of that party. If, on the other hand, the evidence offered by both the moving and opposing parties would support only one conclusion and, even if all the evidence to the contrary is fully credited, a trial court would be obliged to direct a verdict in favor of the moving party, the issue is not genuine.

*St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir.1987).

In *Anderson* the Supreme Court noted that the genuine issue summary judgment standard is very close to the reasonably jury directed verdict standard.

'The primary difference between the two motions is procedural; summary judgment motions are usually made before trial and decided on documentary evidence, while directed verdict motions are made at trial and decided on the evidence that has been admitted.' *Bill Johnson's Restaurants, Inc. v. NLRB*, 461 U.S. 731, 745, n. 11, 103 S.Ct. 2161, 2171, n. 11, 76 L.Ed.2d 277 (1983). In essence, though, the inquiry under each is the same: whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so onesided that one party must prevail as a matter of law.

*Anderson*, 477 U.S. 242, 106 S.Ct. at 2512.

### CONCLUSION

The following are uncontroverted facts relevant to the determination of the issues presently before this Court:

1. The subject policy of insurance, like the policy in *Cherry*, limited coverage to the actual cash value of the vehicle at the time of the loss, and therefore, pursuant to the holding in *Cherry*, Sheffield is not liable to the plaintiff for the face value of the policy.

2. The evidence does not suggest any impropriety with respect to the purchase of the subject policy. The plaintiff has failed to set forth any evidence in his attempt to bind Sheffield and Brickell to the claim of fraud. Failing to come forward with evidence in support of the claim, this Court is of the opinion that the allegations are without merit.

3. On January 27, 1987, Michael Ware stated in the total loss evaluation that the actual cash value of the vehicle was $37,062.50.

4. On January 30, 1987, Michael Ware stated in his report to J. Gordon Gains, Inc. that after the total loss sheet was completed, he was of the opinion that although the local market showed the actual cash value of the vehicle to be around $36,000.00, he was of the opinion that it was slightly high.

5. Michael Ware further stated in his report that the actual cash value of the vehicle was not more than $34,000.00 and that an offer of $32,000.00, less the deductible of $1,000.00, should be offered as settlement for the plaintiff's claim.

6. Sheffield offered the plaintiff $34,000.00, less the deductible of $1,000.00, for settlement of the plaintiff's claim.

7. The plaintiff rejected this offer demanding the face value of the policy of $40,000.00 ($41,000.00, less the deductible of $1,000.00).

It is obvious from the correspondence between the parties that the plaintiff threatened and thereafter filed suit because he was not offered the face value of the policy in settlement of his claim.

Realizing that *Cherry* disposes of that contention, the plaintiff currently alleges that his claim for breach of contract and bad faith still exists because Sheffield did not offer the $37,062.50 that Michael Ware stated in the total loss evaluation as being the actual cash value of the vehicle.

However, the investigative report, completed three (3) days after the total loss evaluation, also contains actual cash value estimations relevant to the plaintiff's claim: $36,000.00, which the adjuster "felt was slightly high;" $34,000.00, which the adjuster determined "the unit would not bring over;" and $32,000.00, which the adjuster recommended as an appropriate amount for settlement. Upon being presented with the aforementioned information, Sheffield offered $34,000.00, arguably, the maximum amount the market would pay for a comparable vehicle. It appears that the situation is plainly one wherein the plaintiff thinks the actual cash value of the vehicle is X and Sheffield thinks that it is Y. At no time did Sheffield ever refuse to pay what is considered the actual cash value of the vehicle to be.

After analyzing the many Mississippi cases addressing the issue of punitive damages, this Court cannot help but recognize the emergence of a pattern of requiring a denial of a claim before the issue of punitive damages becomes appropriate for jury determination. *Tutor v. Ranger Company*, 804 F.2d 1395, 1399 (5th Cir.1986).

In *State Farm Mutual Automobile Insurance Co. v. Roberts*, 379 So.2d 321 (Miss.1980), the actual cash value issue prevalent in this action was presented to the Mississippi Supreme Court. In reversing an award of punitive damages, the Court stated:

> The Appellant's several assignments of error may be disposed of by a resolution of the cardinal issue of whether the evidence establishes an independent tort, a prerequisite to an award of punitive damages. We find the evidence insufficient as a matter of law to establish this essential element. We, therefore, hold the trial court erred in granting the punitive damages instruction. *A research of the record reveals nothing other than a legitimate pocketbook dispute between the parties as to the amount that was due for the demolished automobile, one claiming the sum owed the bank on the automobile and the other admitting coverage in the amount of its policy, specifically, the actual cash value of the automobile. In our judgment, these differences of opinion did not give rise to the level of wanton, gross or intentional conduct in the nature of an independent tort. In the absence of such conduct, a punitive damages award cannot stand.* (citations omitted); (emphasis added)
>
> We reverse and render as to the award of punitive and actual damages and remand for an award of the actual cash value of the automobile at the time of the accident as provided in the policy.

*Id.* at 322.

This Court is not so naive as to conclude that an offer of any sum of money will automatically extinguish the ability to maintain an action for bad faith and punitive damages. However, it has been correctly determined that before a punitive damages claim is rightfully before a jury, the dispute between the parties must be more than a "legitimate pocketbook dispute." *Id.* at 322.

This Court is convinced that even if a jury were to conclude that the actual cash value of the vehicle at the time of loss was $37,062.50, Sheffield's offer of $34,000.00 does not, as a matter of law, amount to the level of gross negligence, intentional wrong, insult or abuse required to consist of an independent tort.

In accordance with the above, this Court is of the opinion that the record clearly shows that there is no genuine issue of material fact and reasonable minds cannot differ on the resolution of the plaintiff's claim for punitive damages. Therefore, the defendants' Motion for Partial Summary Judgment with respect to the issue of punitive damages must be granted.