# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 93-CA-00722-SCT

*ABB CALDWELL, JR., ADMINISTRATOR OF THE ESTATE OF KEITH CALDWELL, DECEASED*

*v.*

*ALFA INSURANCE COMPANY*

| | |
|---|---|
| DATE OF JUDGMENT: | 6/1/93 |
| TRIAL JUDGE: | HON. FRANK G. VOLLOR |
| COURT FROM WHICH APPEALED: | CLAIBORNE COUNTY |
| ATTORNEY FOR APPELLANT: | PAUL SNOW |
| ATTORNEYS FOR APPELLEE: | AL NUZZO |
| | DELIA Y. ROBINSON |
| NATURE OF THE CASE: | CIVIL - INSURANCE |
| DISPOSITION: | AFFIRMED - 12/19/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 1/9/97 |

**BEFORE SULLIVAN, P.J., ROBERTS AND SMITH, JJ.**

**SMITH, JUSTICE, FOR THE COURT:**

¶1. Abb Caldwell Jr. appeals to this Court from an adverse decision of the Claiborne County Circuit Court. Caldwell, in his capacity as Administrator of the Estate of Keith Caldwell, filed suit against Alfa Insurance Company on April 1, 1991, arising from the 1990 death of Keith Caldwell, his eighteen-year old son, who was killed when an intoxicated driver collided head-on with the vehicle in which Keith Caldwell was riding as a passenger.

¶2. Alfa was notified of the accident on February 15, 1991, and began its investigation. After Caldwell's imposed deadline for settlement passed on April 1, 1991, Caldwell filed suit. Alfa continued its investigation and tendered the uninsured motorist and med-pay benefits of $202,000 on May 28, 1991.

¶3. Despite payment by Alfa, Caldwell continued the "bad faith" aspect of its claim alleging unreasonable delay by Alfa in tendering payment. On May 7, 1993, Alfa moved for summary judgment which was subsequently granted by Honorable Frank Vollor on June 1, 1993. Aggrieved, Caldwell appeals citing three issues for our consideration. Issue I concerning whether the trial court erred in granting summary judgment is worthy of discussion. Issues II and III are without merit and

discussion is unnecessary.

¶4. After thorough consideration we find that the trial court was correct in granting summary judgment to Alfa. Alfa gave a reasonable explanation for the delay in making payment to Caldwell. We do not find a six-week delay to be unreasonable or egregious under the facts of this case. Therefore, Alfa's conduct does not rise to a level requiring punitive damages to be considered. Alfa's conduct at most was simple negligence, if that. We affirm the trial court.

## STATEMENT OF THE FACTS

¶5. This case arises from the death of Keith Caldwell, the son of the Appellant, Abb Caldwell. Keith was killed in an automobile accident on October 20, 1990, while riding as a passenger in the car of Angela Gowdy. The accident occurred when J.D. Williams, an intoxicated driver, crossed the center line of Highway 18 and collided head on with the Gowdy vehicle. Williams blood alcohol concentration registered .28 percent.

¶6. At the time of the collision, the Gowdy vehicle was insured by Allstate Insurance Company. The Gowdy policies contained Uninsured/Underinsured provisions with an aggregate total coverage of $40,000 per person and $ 80,000.00 per accident. The tortfeasor, J.D. Williams, carried liability coverage through the Moore Group with limits of $10,000 per person and $ 20,000 per accident.

¶7. At the time of the Keith's death, the Caldwell family held four automobile insurance policies issued by Alfa, all of which included uninsured motorist coverage of $50,000 per vehicle, the aggregate of which totaled $200,000. Alfa was first notified of Keith Caldwell's death on or about February 15, 1991, after which Alfa began investigating the claim. On March 22, 1991, Alfa received a demand letter from the Paul Snow, the Caldwells' attorney, which set an April 1, 1991, deadline to settle the case. After settlement was not reached on April 1, 1991, Abb Caldwell, in his capacity as administrator of the estate of Keith Caldwell, filed suit against J. D. Williams and Alfa Insurance Company. The claim against Alfa demanded uninsured motorist benefits, incidental damages, punitive damages, attorney's fees, and all costs of court. Alfa proceeded with its investigation and tendered payment of $202,000 on May 28, 1991. Caldwell proceeded with the "bad faith" portion of his claim against Alfa.

¶8. On July 15, 1992, Caldwell filed a Motion for Recusal with the trial court, citing the Code of Judicial Conduct Canon 3(C)(1). After review, the trial court denied the motion on October 2, 1992. In its Order, the Court found the allegations set forth by Caldwell to be without merit.

¶9. On January 19, 1993, the trial court, upon motion of Alfa, severed the claims against Alfa and the tortfeasor, J.D. Williams, pursuant to Miss.R.Civ.P. 21. Subsequently, a jury verdict was returned against J.D. Williams for the wrongful death of Keith Caldwell, with damages assessed at $8,000, 000. This verdict was later remitted by Judge Vollor to $500,000.

¶10. On May 7, 1993, Alfa Insurance filed a Motion for Summary Judgment alleging that no genuine issues of material fact existed in the "bad faith" action and that Alfa was entitled to judgment as a matter of law. In addition to the pleadings and depositions, Alfa supported its motion with correspondence between Alfa and Plaintiff's counsel and affidavits by Ronald B. Adcock and John W. Chapman, Esq. Adcock, the Alfa Insurance claims adjuster who handled the Caldwell claim, detailed

his actions regarding the Caldwell claim in his affidavit. John W. Chapman, an attorney practicing law in Brandon, Mississippi, set forth his opinion regarding Alfa's actions in this case. Chapman concluded that Alfa's method of investigation and the length of time involved did not amount to a tortious breach of contract which would warrant punitive damages.

¶11. In response to the Motion for Summary Judgment, Caldwell argued that genuine issues of material fact existed regarding Alfa's conduct and whether this conduct constituted bad faith. Caldwell's response was supported by deposition testimony from the following: Harold Cain, the 30(b)(6) representative of Alfa; Ronald Adcock, the Alfa claims adjuster; and Carolyn Crane, the Allstate adjuster who handled the Gowdy claim. The essence of Caldwell's argument is that Alfa failed to tender the policy limits of Caldwell's uninsured motorist coverage within a reasonable amount of time by relying on the pretext of continuing to investigate the Caldwell claim and other possible insurance coverage.

¶12. On June 1, 1993, the trial court granted Alfa's Motion for Summary Judgment. The court based its ruling on the following: the lack of cooperation Alfa had from the witnesses and other insurance companies; the multiplicity of insurance coverage and coverage issues; the failure of Caldwell to return Alfa's calls or help gather the standard information Alfa had indicated was necessary to complete the investigation; and the intervening bad faith suit for punitive damages with its concomitant legal questions and chilling effect. In light of these circumstances the court concluded that no rational jury could find that Alfa's conduct was malicious, willful or grossly negligent. Aggrieved, Caldwell now appeals.

## DISCUSSION OF LAW

### WHETHER THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT.

¶13. Caldwell argues that Alfa Insurance Company was grossly negligent in its investigation and handling of the Caldwell claim by its delay in tendering payment. Caldwell argues that notwithstanding undisputable evidence available to Alfa regarding coverage issues, other insurance, and damages, Alfa delayed making payment to the Caldwell family. Caldwell insists the passage of 103 days from the time Alfa was originally notified of the death of Keith Caldwell until final payment of the claim on May 28, 1991, was unreasonable and amounted to bad faith. Further, Caldwell argues that Alfa's failure to tender payment after receipt of the demand letter from Plaintiff's counsel on March 22, 1991, which imposed a deadline of April 1, 1991, for settlement of the Caldwell claim constituted bad faith. Caldwell argues that Alfa's conduct creates a jury question on the issue of bad faith and therefore, summary judgment was improper.

¶14. In response, Alfa argues that summary judgment was properly granted because Caldwell failed to set forth specific facts demonstrating genuine issues of material fact. Alfa contends Caldwell's response to the Motion for Summary Judgment consisted of mere allegations and denials of fact and therefore was insufficient to defeat summary judgment. Moreover, Alfa argues that only material facts preclude summary judgment even though immaterial facts may be disputed. Alfa argues that its investigation of the Caldwell claim was pursuant to its duty under Mississippi law to fully investigate all claims. Moreover, Alfa argues the total time period of 103 days for investigation of a $ 200,000 wrongful death claim involving three insurance companies did not rise to the level of a heightened

tort as a matter of law.

¶15. In response, Caldwell argues although three insurers were involved, coverage and liability were immediately clear to Alfa. Caldwell argues the case was simple; a drunken driver crossed the center line and collided head on with the Gowdy vehicle which was covered by Allstate Insurance. In addition, the tortfeasor, J.D. Williams, carried the minimum limits of liability coverage which therefore resulted in the Caldwell claim being an underinsured motorist claim. Abb Caldwell carried coverage with Alfa which included coverage for underinsured motorists. By virtue of the above, Caldwell argues Alfa's need for additional time to fully investigate other possible insurance coverage and witness statements was merely a pretext for their bad faith delay in tending payment. Caldwell argues this failure to timely settle the Caldwell claim resulted in a "constructive denial" of the claim and therefore entitles Caldwell to punitive damages.

¶16. This Court recently set forth the standard of review for summary judgment in *Aetna Cas. and Sur. Co. v. Berry*, 669 So.2d 56 (Miss. 1996).

> The standard for reviewing the granting or the denying of summary judgment is the same standard as is employed by the trial court under Rule 56(c). This Court conducts *de novo* review of orders granting or denying summary judgment and looks at all the evidentiary matters before it-admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If, in this view, the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise, the motion should be denied. Issues of fact sufficient to require denial of a motion for summary judgment obviously are present where one party swears to one version of the matter and another says the opposite. In addition, the burden of demonstrating that no genuine issue of fact exists is on the moving party. That is the non-movant would be given the benefit of the doubt. (citations omitted)

*Id.* at 70. (*citing* *Mantachie Nat. Gas v. Miss. Valley Gas Co.*, 594 So.2d 1170, 1172 (Miss.1992)).

¶17. "Although punitive damages are not ordinarily recoverable in cases involving breach of contract, they are recoverable where the breach results from an intentional wrong, insult, or abuse as well as from such gross negligence as constitutes an independent tort." *Blue Cross & Blue Shield v. Maas*, 516 So.2d 495, 496 (Miss.1987)(citations omitted). "As such, punitive damages are allowed only with caution and within narrow limits." *Id.*

> To recover punitive damages from an insurer for "bad faith", the insured must prove by a preponderance of evidence that the insurer acted with (1) malice, or (2) gross negligence or reckless disregard for the rights of others. *Universal Life Ins. Co. v. Veasley*, 610 So.2d 290, 293 (Miss. 1992) (citing *Weems v. American Security Ins. Co.*, 486 So.2d 1222, 1226-27 (Miss. 1986)); *Aetna Casualty & Surety Co. v. Day*, 487 So.2d 830, 832 (Miss. 1986)). If the insurer had a legitimate or arguable reason to deny payment of the claim, then the trial judge should refuse to grant a punitive damage instruction. *Id.* (citing *Pioneer Life Ins. Co. of Illinois v. Moss*, 513 So.2d 927, 929 (Miss.1987)). Arguable reason is defined as "nothing more than an expression indicating the act or acts of the alleged tortfeasor do not rise to heightened level of an independent tort."

*Id.* "The trial court is responsible for reviewing all evidence before it in order to ascertain whether the jury should be permitted to decide the issue of punitive damages." *Id.* (citing ***Andrew Jackson Life Ins. Co. v. Williams***, 566 So.2d 1172, 1183-1184 (Miss.1990)). "On appeal, this Court will review the briefs and *all* the recorded evidence in order to determine the propriety of the trial judge's decision regarding submission of the issue to the jury." *Id.* at 1184.

¶18. At issue in the case *sub judice* is whether there was a jury question regarding punitive damages? Caldwell argues that the delay in the investigation into and payment of the Caldwell claim constituted gross negligence or reckless disregard for the rights of the Caldwells. An evaluation of Alfa's conduct in handling the investigation and the payment of the Caldwell claim is required.

¶19. Alfa was first notified of Keith Caldwell's death on February 15, 1991, at which time the claim was assigned to Ronnie Adock, an Alfa claims adjuster. Adcock's course of action is set forth in his deposition testimony of December 3, 1991, which accompanied Alfa's Motion for Summary Judgment (Exhibit U) and the Plaintiff's Response thereto (Exhibit B). Adcock explained that once the claim was presented to him he proceeded with a full investigation. Adcock testified that there is no "normal" time period for the period of investigation. Adcock further testified that he sent claim forms to the Caldwells on February 25, 1991 to be signed and returned to Alfa. Adcock stated that Alfa requires the forms to be signed by the insured to authorize Alfa to investigate the claim. Four reserves in the amount of $ 50,000 were set up on February 25, 1991, to pay the Caldwell claim.

¶20. Within the first week of being notified of the Caldwell claim, Adcock verified that Keith Caldwell was an insured under the Abb Caldwell policy and ascertained the amount of uninsured limits under the Caldwell policy. Adcock verified that premiums on the Caldwell policies were in fact current after the claim forms were returned to Alfa. In addition, the death certificate of Keith Caldwell was received by Alfa on March 22, 1991.

¶21. On March 22, 1991, Adcock received confirmation that J.D. Williams had liability coverage in the amount of $10,000 per person and $20,000 per accident. In addition, Adcock testified that he received the declarations page from Allstate Insurance Company on April 8, 1991, which detailed the insurance coverage of the Gowdy vehicle. On March 29, 1991, Adcock received a letter from Carolyn Crane, the Allstate adjuster, stating that Crane could not release Angela Gowdy's statement under advice of counsel.

¶22. Adcock was questioned as to whether or not a settlement deadline "mattered" to Adcock to which he responded "Yes. . . We settle the claim as soon as possible to the deadline." When directly confronted as to why Alfa did not settle this case by the April 1 deadline, Adcock responded "That's going to depend on our investigation as to our--when we can settle it." Adcock explained Alfa needed more time to ascertain their exposure and the limits on other policies which may have affected the amount Alfa was required to pay on the Caldwell claim. Adcock admitted that after a full investigation, the presence of the Allstate coverage on the Gowdy vehicle did not affect whether or not Alfa in fact paid the Caldwell claim.

¶23. Carolyn Crane's deposition detailed Allstate's handling of the Caldwell claim as well as Allstate's communications with Alfa. Although Allstate settled its claim with its insured, Angela Gowdy, shortly after the accident in October 1990, it did not receive notice of the claim on behalf of Keith Caldwell until February 1991. This letter was followed by a March 18, 1991, demand letter setting an

April 1, 1991, deadline for settlement of the claim. Crane testified that Allstate was willing to pay the limits of the Gowdy vehicle before the deadline if certain conditions could be met.

¶24. Crane further testified that Allstate, like Alfa, requested additional information regarding other insurance as part of her investigation into the Caldwell claim. Crane indicated she considered this to be an appropriate part of her investigation. Crane testified that Allstate does not accept as true all facts presented when the claim is presented, but rather, like Alfa, conducts a full investigation to verify the information. On March, 21, 1991, Allstate determined that payment of the full UM limits would be tendered. However, this amount was not paid by April 1, 1991, the deadline imposed by Plaintiff's counsel. Caldwell also sued Allstate for payment of the insurance proceeds in May or June of 1991.

¶25. Caldwell argues that Alfa's delay in making payment to its insured constituted a gross disregard for the rights the Caldwells. However, Alfa argues that it had a legitimate reason for the delay: a continuing investigation into other insurance coverage which may have affected the extent of Alfa's liability. Caldwell bears the burden to demonstrate that Alfa had no arguable reason for denying coverage.[1]

¶26. Caldwell cites *Blue Cross & Blue Shield v. Maas*, 516 So.2d 495 (Miss.1987), as authority in support of his argument. In *Maas*, Blue Cross initially denied Maas' claim for hospital benefits although Maas' employer had paid its premiums and Blue Cross had cashed the check. Blue Cross continued to deny the claim after it became aware of a mistake made in cancelling Maas' coverage following his resignation. *Maas* subsequently inquired as to the denial of his claim by Blue Cross and was told Blue Cross would "check into it." Maas never received a response.

¶27. On January 10, 1985, Maas filed suit against Blue Cross seeking punitive damages for the bad faith denial of his claim. Once again, Blue Cross began an investigation into the validity of Maas' claim. The investigation took an additional two and one half weeks to complete. However, Blue Cross again denied Maas' claim despite the investigation which revealed that Maas' coverage was wrongfully terminated. Blue Cross finally tendered payment on March 11, 1985, approximately five months after the claim was submitted to Blue Cross and six weeks after the investigation revealed the claim was improperly denied. The insurer's defense for its delayed payment was "we made a mistake." In *Maas*, this Court held that the jury award of punitive damages was consistent with Mississippi law.

¶28. We find that there are distinctions and similarities between the case *sub judice* and *Maas*. The critical factor which distinguishes the case at bar from *Maas* is that Alfa Insurance Company never denied the Caldwell claim. Caldwell's "constructive denial" argument is unpersuasive. Most cases before this Court have involved the wrongful denial of a claim rather than a mere delay in payment. Moreover, Mississippi law imposes a duty upon insurers to "conduct a reasonably prompt investigation of all relevant facts." *Bankers Life and Casualty Co. v. Crenshaw*, 483 So.2d 254, 276 (Miss.1985). Alfa argues that it simply acted in accordance with the duty imposed upon it by Mississippi law.

¶29. We hold that the conduct of Alfa in the case *sub judice* does not rise to the level of egregiousness as did that of Blue Cross in *Maas*. After being notified of the Caldwell claim on February 15, 1991, Alfa began its investigation. The record reflects that Adcock immediately sent claim forms to Plaintiff's counsel to be completed and returned. Adcock also began to investigate

other insurance coverage which may have affected the amount Alfa was required to pay. Adcock stated in his deposition that this information was needed to complete his investigation. Adcock received confirmation as to J.D. Williams' coverage on March 22, 1991, and on April 8, 1991, received the declarations page containing the limits of the Allstate policy covering the Gowdy vehicle. Therefore, as of April 8, 1991, the investigation into "other insurance" coverage would appear to be complete and the claim could have been paid. However, the claim was not paid until May 28, 1991, approximately six weeks after Adcock's investigation was complete.

¶30. This Court is now faced with an issue of first impression involving an insurer which did not deny a claim but rather delayed making payment on that claim. A review of precedent reveals that this Court has repeatedly addressed the issue of delay by an insurer in conjunction with the denial of a claim. However, the issue of delay without an accompanying denial has not been addressed with the same degree of frequency. See *Travelers Indem. Co. v. Wetherbee*, 368 So.2d 829 (Miss.1979). In *Travelers*, this Court affirmed a punitive damage instruction where the insurer witheld payment for a period of eight months, despite being warned that the insured was suffering economically. Moreover, the insurer's conduct was in breach of the express provisions of the insurance policy which required payment within sixty days of the proof of loss. As a result, this Court concluded that the unexplained delay by Travelers coupled with the clear violation of the policy provisions and the awareness of the insured's financial condition left a strong inference that Travelers' conduct was motivated by economic gain. *Id.* at 835.

¶31. Alfa's conduct in the present case simply does not rise to the level of that present in *Travelers*. Here, there is no factual dispute regarding Alfa's handling of the Caldwell claim. The record amply demonstrates the course of conduct by Alfa. We find that Alfa gave a reasonable explanation for the delay in payment: they were continuing their investigation. A review of Alfa's conduct reveals a six-week period of delay after the deadline set by Caldwell's attorney. We do not find that to be unreasonable considering the complexity of this case. Alfa's conduct and this short delay are nowhere near the eight-month delay and the magnitude of the problems present in *Travelers* or Blue Cross' actions in the *Maas* case.

¶32. More importantly, Alfa never denied the Caldwell claim. This Court now holds that the wrongful denial of a valid claim or conduct of such an egregious nature as in *Travelers* is the linchpin for submission of the punitive damages to the jury.

¶33. This Court requires an insurer to demonstrate an "arguable reason" for the denial/delay in payment. *Standard Life Ins. Co. v. Veal*, 354 So. 2d 239 (Miss. 1977). However, we have repeatedly held that "punitive damages are not mandated by the absence of an arguable reason . . . because the denial of the claim could be the result of honest mistake or oversight--ordinary or simple negligence." *State Farm Fire and Casualty v. Simpson*, 477 So. 2d 242, 250 (Miss. 1985). Moreover, "the absence of an 'arguable reason' does not necessarily establish that the insurer acted with malice or with gross negligence or reckless disregard for the insured's rights." *Blue Cross & Blue Shield v. Maas*, 516 So. 2d 495,497 (Miss. 1987).

¶34. Alfa argues the reason for the delay in payment was its ongoing investigation into the Caldwell claim. However, Caldwell argues the time period involved in investigation of the claim was improper. The Fifth Circuit has held that "improper investigation is relevant only to the extent that it sheds light

on whether the insurer has a reasonably arguable basis to deny the claim." *Dueringer v. General American Life Ins. Co.*, 842 F.2d 127 (5th Cir. 1988). Alfa was required by Mississippi law to conduct a thorough investigation. Even assuming the "investigation" is not viewed as a legitimate or arguable reason for Alfa's delay, it does not automatically follow that Alfa acted with "gross negligence or reckless disregard for the insured's rights."

¶35. Moreover, Alfa never denied coverage under the Caldwell policy. In *Tutor v. Ranger Ins. Co*., 804 F.2d 1395 (5th Cir.1986), the court had occasion to address the issue of whether a delayed investigation by an insurer amounted to gross negligence of an independent tort and thus created a jury issue as to punitive damages. Like the case *sub judice*, the insurer in *Tutor* never denied the claim. In *Tutor*, the court stated that "Ranger never denied the claim but instead only investigated the claim, determined it to be valid, disputed the valuation of the skidder and delayed payment while these issues were resolved." *Id.* at 1398. The court added "[t]his is not to say that we think Ranger's delay in settling the claim was in keeping with good business practices, or that the claim could not have been investigated more rapidly." *Id.* at 1399. The court stressed that the insurer never denied coverage under the policy, and it would be faced with a different case had coverage been denied. *Id.* The court, applying Mississippi law, reversed the jury award of punitive damages.

¶36. In *Tutor*, the Fifth Circuit took into consideration "that the Mississippi Supreme Court has been extremely reluctant to allow punitive damages in cases where the insurer did not deny coverage, but only disputed the amount of the claim or delayed payment." *Id.* Given the situation presented in the case *sub judice*, *Tutor* is persuasive. In *Tutor*, there was no denial of the claim, but rather the insurer and insured were engaged in an ongoing dispute over the exact value of the property destroyed. In *Tutor*, the Court concluded that the "case initially involved a reasonable inquiry into the validity of the claim and a subsequent good faith dispute over the cash value. . . ." *Id.* at 1399. The *Tutor* situation is analogous to the Caldwell case, wherein Alfa was attempting, through its investigation, to ascertain the amount of additional insurance coverage which may have affected the amount of its payment, i.e. the exact value of the Caldwell claim. Moreover, the undisputed fact is that Alfa ultimately tendered payment of the Caldwell claim. The fact that the insurer ultimately tendered full payment of a claim is persuasive to this Court.

¶37. Having established that no denial of the Caldwell claim occurred; that the claim was eventually paid; and the duty imposed upon Alfa by law to fully investigate all relevant facts, this Court cannot conclude that Alfa's conduct, when viewed in the light most favorable to Caldwell, rose to the level of gross negligence or an independent tort. Considering when payment was made, the most that can be said regarding Alfa's handling of the Caldwell claim is that Alfa was negligent, if that. We hold that the trial court correctly refused to submit the issue of punitive damages to a jury in granting summary judgment to Alfa.

## CONCLUSION

¶38. After review of the record, this Court concludes that the trial court properly granted summary judgment on the issue of punitive damages. The linchpin here is that Alfa never denied the claim, but rather continued its investigation until all concerns had been resolved. The claim was paid six weeks after Caldwell's imposed deadline. We do not find that time frame to be unreasonable given the explanation in this record. We caution, however, against failure to pay claims where liability and

coverage is clear and where the time frames are of greater length, such as in *Travelers*. This would be applicable even more so where coverage is denied. This Court must affirm the lower court.

**¶39. JUDGMENT AFFIRMED.**

**LEE, C.J., PRATHER AND SULLIVAN, P.JJ., PITTMAN, McRAE, ROBERTS AND MILLS, JJ., CONCUR. BANKS, J., NOT PARTICIPATING.**

1. The plaintiff's burden in this respect likewise exists at the summary judgment stage where the insurance company presents an adequate prima facie showing of a reasonably arguable basis for denial so as to preclude punitive damages. *Polk v. Dixie Ins. Co.*, 897 F.2d 1346, 1350 (5th Cir.1990).