**James REECE and Montez Reece, Plaintiffs,**

v.

**STATE FARM FIRE & CASUALTY COMPANY, Defendant.**

**Civ. A. No. EC 85–433–D–D.**

United States District Court, N.D. Mississippi, E.D.

Sept. 17, 1987.

Supplemental Opinion Dec. 22, 1987.

Thomas A. Coleman, Ackerman, Miss., for plaintiffs.

Guy T. Gillespie, III, Robert H. Faulks, Oxford, Miss., for defendant.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

This cause is presently before the court on the defendant's motions for partial summary judgment as to extra-contractual damages based on breach of the defendant's "Loss Payment" policy provision and for punitive damages based on an alleged wrongful refusal to pay a "just debt". Having reviewed the parties' briefs and being otherwise fully advised in this mat-

ter, the court finds that the defendant's motion for partial summary judgment as to extra-contractual damages for breach of the "Loss Payment" policy provision should be denied and its motion for partial summary judgment as to punitive damages should be sustained.

## FINDINGS OF FACT

This cause is an action by plaintiffs, Mr. James Reece and Mrs. Montez Reece ("the Reeces"), a married couple, to recover policy proceeds from a fire which occurred at plaintiffs' property in Weir, Mississippi on or about February 27, 1985. On April 23, 1979, plaintiffs' home was first insured by defendant State Farm Fire & Casualty Company ("State Farm") against loss by fire in the amount of $50,000 for the dwelling, $5,000 for appurtenant private structures, $25,000 for unscheduled personal property, and $10,000 for additional living expenses. On February 27, 1985, the plaintiffs' home was insured for $66,000, their other structures for $6,600, personal property for $33,000, and loss of use for $13,-200.00.

On Wednesday evening, February 27, 1985, at approximately 8:00 p.m., a passing motorist noticed that plaintiffs' home was on fire. The motorist notified plaintiffs' neighbors who called the Weir, Mississippi Fire Department which responded to the fire. As a result of the fire, plaintiffs sustained substantial damage to the dwelling and to its contents. State Farm received notice of the fire on or about February 28, 1985.

State Farm set about investigating the fire and, on or about March 5, 1985, employed Mr. Donald F. Zwick, who inspected, examined, and analyzed the remnants of plaintiffs' burned home. He communicated his findings to State Farm on or about March 12, 1985. State Farm's claims office received plaintiffs' sworn proof of loss form on March 27, 1985 and subsequently received their personal property inventory forms on April 9, 1985.

Both Mr. and Mrs. Reece were deposed on April 17, 1985. Their depositions were requested once again on May 24, 1985, to

be taken on June 6, 1985. On May 29, 1985, State Farm's Resident Claim Superintendent, Terry H. Blalock, wrote the Reeces and informed them that although State Farm was not denying liability, it nevertheless declined to make any payment at that time. Plaintiffs were requested to submit to examination under oath again on June 18, 1985 and July 11, 1985. The June 18, 1985 examination did not take place because Mr. Reece was under a doctor's care in Jackson, Mississippi at the time; however, the plaintiffs were examined once again on July 11, 1985 in the office of their attorney at Ackerman, Mississippi.

In a letter dated August 21, 1985, plaintiffs and their counsel were advised by Dan W. Webb, attorney for State Farm, that State Farm had decided to deny the Reece's claim for fire loss under the policy of insurance. State Farm's denial of the claim was allegedly denied for several reasons, including but not limited to: intentional burning of the dwelling and contents by the Reeces, and material representations and concealments by the Reeces during the course of State Farm's investigation of the fire loss.

The Reeces filed this complaint against State Farm on October 24, 1985. The present motions by State Farm request: 1) dismissal of the plaintiffs' claim that they are entitled to damages based on State Farm's alleged breach of its "Loss Payment" policy provision, which allegedly obligated State Farm to complete its investigation and communicate a decision on the claim for fire damages within 60 days of State Farm's receipt of the sworn proof of loss from the plaintiffs; and 2) dismissal of the Reeces' claim for punitive damages based on State Farm's alleged wrongful refusal to pay a "just debt" owed the Reeces.

There are two policy provisions relevant to the plaintiffs' claim for damages. Item 2, "Your Duties After Loss", found under "Section 1—Conditions", provides that the insured is to:

... submit to us [State Farm], within sixty days after we request, your signed, sworn proof of loss which sets forth, to the best of your knowledge and be-

lief.... 6. an inventory of damaged personal property....

The provision on which plaintiffs directly rely, Item 10, "Loss Payment", reads as follows:

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

a. reach an agreement with you; or

b. there is an entry of a final judgement; or

c. there is a filing of an appraisal award with us.

## CONCLUSIONS OF LAW

I. Extra-contractual Damages for Breach of "Loss Payment" Provision

The question which must be addressed here is whether the "Loss Payment" provision set out above can reasonably be construed to support the plaintiffs' claim for damages based on State Farm's inability to communicate a denial within 60 days after receipt of the plaintiffs' proof of loss statement.

State Farm correctly states that a motion for partial summary judgment is an appropriate procedure for resolving disputes involving the interpretation of unambiguous contract provisions and terms. *Union Planters Nat. Leasing, Inc. v. Woods*, 687 F.2d 117 (5th Cir.1982). Interpretation of contractual provisions is a question of law for the court to decide when the meaning of the terms is clear and unambiguous. *Aero Intern v. United States Fire Ins. Co.*, 713 F.2d 1106, 1109 (5th Cir.1983); *Hicks v. Quaker Oats Co.*, 662 F.2d 1158, 1175 (5th Cir.1981). Furthermore, under Mississippi law, words of a contract are to be given their ordinary meaning. *Mississippi Power & Light Co. v. United Gas Pipeline*, 760 F.2d 618, 622 (5th Cir.1985). The Mississippi Supreme Court has held that contractual provisions are ambiguous where they are susceptible of two or more reasonable interpretations, or where one provision is in direct conflict with another

provision, or where terms are unclear or of doubtful meaning. *Dennis v. Searle*, 457 So.2d 941 (Miss.1984). As this court stated in another context in the case of *DeMarion Janitorial Serv. v. Universal Development*, 625 F.Supp. 1353, 1356 (N.D.Miss. 1985):

It is firmly entrenched in the jurisprudence of Mississippi that this court must, in this diversity case, construe the written contract as made by the parties, giving the words of the document their commonly accepted meaning. If no ambiguity exists, this court must accept the plain meaning of the instrument as the intent of the parties and give effect to the instrument accordingly. The court recognizes that contracts are solemn obligations and the court must give them effect as written. (citations omitted)

This court has also held that as a general rule, insurance policies are to be construed in accordance with general principles of contractual construction. *Western Line Consol. Sch. v. Continental Cas. Co.*, 632 F.Supp. 295 (N.D.Miss.1986).

The question for the court to decide is whether there is an ambiguity in the "Loss Payment" provision of the policy in question. Whether any ambiguity exists is a question of law for the court to decide. *Hicks v. Quaker Oats Co., supra*, at 1175. State Farm suggests that there is no language in the subject provision which compels it to complete its investigation and to communicate a decision on a claim within 60 days of receipt of the insured's proof of loss. The Reeces argue that the provision should be construed as written, i.e., payment was due 60 days after State Farm received the plaintiffs' proof of loss.

There is no dispute that State Farm received the plaintiffs' proof of loss on March 27, 1985 and their personal property inventory forms on April 9, 1985. According to the Reeces, therefore, State Farm was obliged either to make payment or to communicate its denial of the Reeces' claim by June 8, 1985. No denial was communicated to the Reeces until August 21, 1985, over 130 days after State Farm received the Reeces' personal property inventory forms.

Construing the 60–day period in the "Loss Payment" provision literally and strictly, State Farm did not meet its obligation to make payment or deny the claim within the contractually mandated time period. It is well settled in this circuit that insurance contracts, and each and every provision thereof, are to be construed strongly against the drafter. *Brander v. Nabors*, 443 F.Supp. 764 (N.D.Miss.), *aff'd*, 579 F.2d 888 (5th Cir.1978). State Farm drafted the language in question.

State Farm argues that the 60–day provision does not apply to the situation seen in the present case. In fact, State Farm contends there is no language in the "Loss Payment" provision which requires State Farm to complete its investigation and to communicate a decision within 60 days of its receipt of the proof of loss.[1] Rather, State Farm suggests that an insurer is permitted a "reasonable period of time to complete an investigation of a fire loss." Defendant's Memo at 5. No Fifth Circuit nor Mississippi Supreme Court authority is offered in support of State Farm's argument; State Farm cites only a Seventh Circuit and Tenth Circuit opinion and a quotation from Appleman, *Insurance Law and Practice* (Rev. ed. 1972). These authorities are only persuasive and not controlling upon this court.

State Farm argues, alternatively, that if the "Loss Payment" provision does mean that its investigation and decision on plaintiffs' fire loss claim must be completed within 60 days, the actions of plaintiffs raise an estoppel or waiver which would preclude any claim on that basis. State Farm points to *Mitchell v. Aetna Casualty & Surety Company*, 579 F.2d 342 (5th Cir.1978) as supportive of its position on estoppel or waiver. The court finds as a matter of law that there was no waiver on plaintiffs' part. To constitute a waiver, there must be a knowing and intentional relinquishment of a right. *Id.* at 347. State Farm has shown no such knowing or intentional renunciation of rights on the part of the Reeces.

On the issue of estoppel, the Fifth Circuit sets out six criteria for the application of estoppel in *Mitchell*. Four of those are relevant to the court's inquiry in this case:

A Court will estop—in other words, prevent—a party from raising a valid legal argument if (1) his actions or words are inconsistent with the legal right he later asserts; (2) he intends or could expect that the party asserting estoppel would act upon his words or conduct; (3) he knows the real facts; (4) the party asserting estoppel does not know the true facts....

*Id.* at 347–348. State Farm argues that the Reeces' failure to submit to a second examination under oath prior to June 8, 1985 raises an estoppel which precludes the Reeces from charging State Farm with failure to render a decision or make payment within the 60–day period of the policy's "Loss Payment" provision. As State Farm states the proposition:

It would clearly be improper for the law to permit these Plaintiffs to delay State Farm's investigation of the fire loss beyond sixty days after receipt of the proof of loss, and thereafter, be permitted to take advantage of some alleged right to be advised of State Farm's decision on the claim within the sixty day period following receipt of the proof of loss.

Defendant's Memo at 9.

■ Applying the test set forth in *Mitchell*, the court holds that estoppel should not be applied to the plaintiffs' claim that State Farm should have paid their claim within 60 days. Mr. Reece's stated reason for failing to appear for another examination under oath prior to June 8, 1985 is that he was under a doctor's care in Jackson, Mississippi. State Farm does not challenge or dispute this allegation. Mr. Reece's action in failing to appear for a second deposition prior to June 8, 1985 is not inconsistent with his later claim that State Farm should have already made a decision on his claim at that time. The court takes notice of the

---

1. In this regard, State Farm suggests that one of the three events listed in subsections a., b. and c. of the "Loss Payment" provision must occur before the liability for payment matures. This argument would render the 60–day period a nullity.

fact that both Mr. and Mrs. Reece had previously been examined by State Farm on April 17, 1985. They had no reason to believe at that time nor in June 1985 that State Farm intended to deny their claim. Thus, the Reeces had no reason to expect that State Farm would or would not act upon their actions of failing to appear for a second deposition on June 18, 1985.

Nor did the Reeces know the real facts, namely, that State Farm already had in its possession an expert's report which suggested an incendiary origin for the fire, when they failed to make themselves available for a second deposition prior to June 8, 1985, the 60–day deadline under the "Loss Payment" provision of their policy. To the contrary, State Farm knew the true facts at the time in question, i.e., the basis for its ultimate denial of plaintiffs' claim. At no point does State Farm suggest or argue that the plaintiffs' failure to submit to a second examination under oath prior to June 8, 1985 formed the basis for its decision not to communicate its decision on the fire loss claim within the 60–day time frame.

Plaintiffs were understandably cooperating with State Farm, as is the duty of any insured, in an attempt to reach an amicable resolution on their claim. Had plaintiffs been advised that their claim had been denied within the 60–day time frame prescribed in their policy, no second deposition would likely have been required of them. The court holds that plaintiffs, therefore, are not estopped from arguing that State Farm should have communicated its decision within 60 days of its receipt of the plaintiffs' proof of loss and personal property inventory forms. Accordingly, State Farm is not entitled to judgment as a matter of law on this claim. Fed.R.Civ.P. 56(c). The court is of the opinion that summary judgment in State Farm's favor on this claim should be denied.

## II. Punitive Damages for State Farm's Refusal to Pay a "Just Debt"

State Farm maintains that there is no legal basis on which the plaintiffs may make a claim for punitive damages based on State Farm's refusal to pay the claim for fire loss because, under Mississippi law, when an insurance company demonstrates an "arguable reason" to deny a claim, the issue of punitive damages must be dismissed. Numerous cases support State Farm's contention. *See e.g., Gorman v. Southeastern Fidelity Insurance Co.,* 775 F.2d 655, 659–660 (5th Cir.1985) (affirming summary judgment by district court on punitive damages issue where insurer has arguable basis for denial of claim); *Davidson v. State Farm Fire & Casualty Co.,* 641 F.Supp. 503, 506 .(N.D.Miss.1986) (granting summary judgment where insurer did not meet punitive damages standard); *Patton v. Aetna Insurance Co.,* 595 F.Supp. 533, 535–536 (N.D.Miss.1984) (summary judgment granted to insurer based on arguable reason for denying claim).

Plaintiffs argue that there is a genuine issue as to the material fact of whether State Farm had a legitimate or arguable basis to deny the plaintiffs' claim on August 21, 1985 and that this issue precludes the court from sustaining State Farm's motion for partial summary judgment on punitive damages. Plaintiffs' Memo. at 21. Even if a court finds that an insurance company had no arguable reason for denying a claim by the insured, however, the court must also find either "(1) that the insurer acted with malice or (2) that the insurer acted with gross negligence or reckless disregard for the rights of others." *Aetna Casualty & Surety Co. v. Day,* 487 So.2d 830, 832–834 (Miss.1986). *See also State Farm Fire & Casualty Co. v. Simpson,* 477 So.2d 242 (Miss.1985).

Plaintiffs would have the court ignore the evidence tending to indicate that the fire which destroyed their home was incendiary, that the plaintiffs may have had a financial motive for burning the building, and that the plaintiffs may have had an opportunity to burn their home. At the same time, plaintiffs ask this court to find that State Farm's reliance on this evidence of arson was malicious, grossly negligent, or in reckless disregard of plaintiffs' rights.

These factors of incendiary cause, motive and opportunity are the primary elements required for an insurer to prevail on an arson defense to the underlying contract claim. *Vicksburg Furniture Manufacturer, Ltd. v. Aetna Casualty and Surety Company*, 625 F.2d 1167, (5th Cir.1980). Nevertheless, plaintiffs argue that their poor financial condition, the findings of State Farm's expert which suggest an incendiary origin for the fire, and the fact that plaintiffs were the last individuals in the home before the fire was discovered do not constitute "credible evidence" that State Farm had an arguable basis for denying their claim and that summary judgment should therefore be denied. The court does not agree with the plaintiffs' interpretation of the standard for punitive damages. The plaintiffs have failed to convince this court that State Farm's denial of their claim reached the "heightened status of an independent tort" so as to support an award of punitive damages. *State Farm Fire & Casualty Co. v. Simpson, supra*, at 250.

State Farm was permitted to rely on its expert's finding that the fire which destroyed plaintiffs' home was incendiary in origin and involved the use of some liquid accelerant. The court construes this evidence as "credible evidence" of State Farm's arguable reason for denying the Reeces' claim. *See Bankers Life & Cas. Co. v. Crenshaw*, 483 So.2d 254, 295 (Miss. 1985) (Robertson, J., dissenting).

Although the plaintiffs may submit evidence at trial that the fire was accidental in origin, thereby creating a conflict in the evidence relating to the defense of arson and State Farm's obligation, if any, on the underlying contract claim, this does not preclude dismissal of the plaintiffs' claim for punitive damages. In fact, the Mississippi Supreme Court has held that when an insurance company demonstrates that the plaintiff would not be entitled to a directed verdict on the underlying contract claim, it necessarily follows that the insurance company had an arguable reason for denying the claim and litigating the question of its obligations under the policy. *See e.g.,*

*Southern United States Life Ins. Co. v. Caves*, 481 So.2d 764, 769 (Miss.1985); *Blue Cross and Blue Shield of Mississippi, Inc. v. Campbell*, 466 So.2d 833, 844 (Miss.1984).

In the present case, the facts indicate no basis for awarding punitive damages based on any wrongful refusal of State Farm to pay a "just debt" to the plaintiffs. The court is of the opinion that State Farm had an arguable reason for denying payment on this claim due to the various facts suggesting that plaintiffs may have committed the incendiary acts in question. State Farm's investigation revealed an incendiary origin for the fire which destroyed plaintiffs' home and evidence suggesting that plaintiffs had both motive and opportunity to commit the act of arson. Since State Farm has demonstrated facts supporting its arson defense, the court finds that State Farm acted reasonably in denying the plaintiffs' claim. *See Travelers Indemnity Co. v. Wetherbee*, 368 So.2d 829 (Miss. 1979). Accordingly, State Farm is entitled to summary judgment on the plaintiffs' claim for punitive damages based on an intentional and deliberate refusal to pay a just claim.

A separate order will be entered by the court.

## SUPPLEMENTAL OPINION

This cause is presently before the court on the defendant's motion for reconsideration of the court's denial of partial summary judgment as to extra-contractual damages related to the alleged breach by defendant of its "Loss Payment" insurance policy provision, as reflected in the court's memorandum opinion and order of September 16, 1987. Having reviewed the parties' briefs and being otherwise fully advised in the premises, the court finds that the defendant's motion for reconsideration of the court's denial of summary judgment as to extra-contractual damages for breach of the "Loss Payment" policy provision should be denied.

## FINDINGS OF FACT[1]

This cause is an action by plaintiffs, Mr. James Reece and Mrs. Montez Reece ("the Reeces"), a married couple, to recover policy proceeds from a fire which occurred at plaintiffs' property in Weir, Mississippi on or about February 27, 1985. On April 23, 1979 plaintiffs' home was first insured by defendant State Farm Fire & Casualty Company ("State Farm") against loss by fire in the amount of $50,000 for the dwelling, $5,000 for appurtenant private structures, $25,000 for unscheduled personal property, and $10,000 for additional living expenses. On February 27, 1985, the plaintiffs' home was insured for $66,000, their other structures for $6,600, personal property for $33,000, and loss of use for $13,200.00.

On Wednesday evening, February 27, 1985, at approximately 8:00 p.m., a passing motorist noticed that plaintiffs' home was on fire. The motorist notified plaintiffs' neighbors, who called the Weir, Mississippi Fire Department, which responded to the fire. As a result of the fire, plaintiffs sustained damage to the dwelling and to its contents. State Farm was given notice of the fire on or about February 28, 1985.

State Farm set about investigating the fire and, on or about March 5, 1985, employed Mr. Donald F. Zwick, who inspected, examined, and analyzed the remnants of plaintiffs' burned home. He communicated his findings to State Farm on or about March 12, 1985. State Farm's claims office received plaintiffs' sworn proof of loss form on March 27, 1985 and subsequently received their personal property inventory forms on April 9, 1985.

Both Mr. and Mrs. Reece were deposed on April 17, 1985. Their depositions were requested once against on May 24, 1985, to be taken on June 6, 1985. On May 29, 1985, State Farm's Resident Claim Superintendent, Terry H. Blalock, wrote the Reeces and informed them that although State Farm was not denying liability, it nevertheless declined to make any payment at that time. Plaintiffs were requested to submit to examination under oath again on June 18, 1985 and July 11, 1985. The June 18, 1985 examinations did not take place because Mr. Reece was under a doctor's care in Jackson, Mississippi at the time; however, the plaintiffs were examined once again on July 11, 1985 in the office of their attorney at Ackerman, Mississippi.

In a letter dated August 21, 1985, plaintiffs and their counsel were advised by Dan W. Webb, attorney for State Farm, that State Farm had decided to deny the Reeces' claim for fire loss under the policy of insurance. State Farm's denial of the claim was allegedly based on several reasons, including but not limited to: intentional burning of the dwelling and contents by the Reeces, and material misrepresentations and concealments by the Reeces during the course of State Farm's investigation of the fire loss.

The Reeces filed this complaint against State Farm on October 24, 1985. The present motion by State Farm requests again dismissal of the plaintiffs' claim that they are entitled to extra-contractual damages[2] based on State Farm's alleged breach of its "Loss Payment" policy provision, which allegedly obligated State Farm to complete its investigation and communicate a decision on the claim for fire damages within 60 days of State Farm's receipt of the sworn proof of loss from the plaintiffs. The court in its earlier ruling dismissed the Reeces' claim for punitive damages based on State Farm's alleged wrongful refusal to pay a "just debt" owed the Reeces.

There are two policy provisions relevant to the plaintiffs' claim for damages. Item 2, "Your Duties After Loss", found under "Section 1—Conditions", provides that the insured is to:

[S]ubmit to us [State Farm] within sixty days after we request, your signed,

---

1. The findings of fact set forth herein are essentially the same as those reflected in the court's September 16, 1987 memorandum opinion.

2. Plaintiffs seek compensatory, extra-contractual damages for alleged aggravation of Mr. Reece's pre-existing heart condition and for "emotional stress and strain" allegedly sustained by both Mr. and Mrs. Reece.

sworn proof of loss which sets forth, to the best of your knowledge and belief. . . .

6. an inventory of damaged personal property. . . .

The provision on which plaintiffs directly rely, Item 10, "Loss Payments", reads as follows:

We will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

a. reach an agreement with you; or

b. there is an entry of a final judgment; or

c. there is a filing of an appraisal award with us.

## CONCLUSIONS OF LAW

A. Extra–Contractual Damages for Breach of "Loss Payment" Provision [3]

The defendant asserts in its motion for reconsideration that the court constructed a contractual obligation on State Farm's part to render a decision on the plaintiffs' insurance claim within 60 days of receipt of the plaintiffs' proof of loss and that the court recognized a tort remedy for violation of this "judicially created" contractual duty.

State Farm correctly discerns that the court found an obligation on the part of the insurance company to render a decision on the Reeces' claim within 60 days of receipt of the proof of loss. The court's decision, however, did not require the court to "create" any obligation not already implicit in the insurance contract between State Farm and the Reeces which State Farm itself drafted. *Cf. A. Copeland Ent. v. Pickett & Meador*, 422 So.2d 752 (Miss.1982) (court will not draft a contract where parties have not manifested an intent to be bound).

As the court noted in its earlier opinion, under Mississippi law, words of a contract are to be given their ordinary meaning. *Mississippi Power & Light Co. v. United Gas Pipeline*, 760 F.2d 618, 622 (5th Cir. 1985). The Mississippi Supreme Court has also held that contractual provisions are ambiguous where they are susceptible of two or more reasonable interpretations, or where one provision is in direct conflict with another provision, or where terms are unclear or of doubtful meaning. *Dennis v. Searle*, 457 So.2d 941 (Miss.1984).

State Farm states pointedly that there is no requirement in the subject policy which compels it to complete its investigation and to communicate a decision within 60 days of receipt of the insured's proof of loss. State Farm also suggests that there is no ambiguity in the subject policy language which would lead the court to construe such a 60–day requirement. The Reeces argue that the provision should be construed as it is written to require that payment or notification of denial is due 60 days after State Farm receives the plaintiffs' proof of loss.[4]

B. Ambiguity in the Policy Language

■ The question for the court to decide is whether there is an ambiguity in the "Loss Payment" provision of the policy in question which would allow State Farm additional time to complete its investigation

---

**3.** The damages sought by plaintiffs for emotional distress are actually compensatory in nature. *See Jones v. Benefit Trust Life Ins. Co.,* 617 F.Supp. 1542, 1547–1548 (S.D.Miss.1985).

**4.** In this regard, the court draws a distinction between the actual denial of the Reeces' claim, which the court has already ruled was based on an arguable reason, and the delay in communication of that denial to the Reeces. The denial and the delay may be considered separate and distinct acts on the part of State Farm. The question remains whether there can be any liability for extra-contractual damages related to intentional infliction of emotional distress when State Farm has been found not to be liable for punitive damages. This court, per Chief Judge Senter, has held that the standard of proof for damages related to emotional distress is the same as the one applicable to claims for punitive damages. *Davidson v. State Farm Fire & Cas. Co.,* 641 F.Supp. 503, 511 (N.D.Miss.1986). The court has discovered no definitive ruling that extra-contractual damages are explicitly *unavailable* when punitive damages cannot be recovered.

beyond the 60 days immediately following its receipt of the Reeces' personal property inventory forms. Whether any ambiguity exists is a question of law for the court to decide. *Hicks v. Quaker Oats Co.*, 662 F.2d 1158 (5th Cir.1981). State Farm repeats its argument that there is no mandate in the subject provision which compels it to complete its investigation and to communicate its decision on a claim within 60 days of receipt of the insured's proof of loss. In point of fact, State Farm declares that an insurer is permitted a "reasonable" period of time to complete an investigation of a fire loss. Under State Farm's suggested reading of the "Loss Payment" provision, the relevant language should probably be construed to read:

> Loss will be payable 60 days after we receive your proof of loss and *either:*
>
> a. reach an agreement with you; or
>
> b. there is an entry of a final judgment; or
>
> c. there is a filing of an appraisal award with us.[5]

The central theme of State Farm's argument, then, is that two conditions must be met before the 60–day period begins to run: 1) State Farm must receive a proof of loss from the insureds; and, 2) one of the conditions set forth in subpart a., b., or c. above must be satisfied. State Farm carries this analysis to a perplexing extreme, suggesting that its liability for payment of the Reeces' claim may not mature until the plaintiffs prove they are entitled to payment by obtaining a judgment in this court.

In order to accept State Farm's argument that it is entitled to a "reasonable" period of time to complete an investigation, the court must find that the parties' insurance contract does not mandate some definite period. Additionally, as State Farm admits, even if the court finds that the insurer was entitled to a reasonable period to complete its investigation, the determination of reasonableness is dependent upon the particular circumstances of each case.[6]

The authorities State Farm offers for its argument that an insurer is entitled to a reasonable period of time to conduct its investigation are *Wisconsin Screw Co. v. Fireman's Fund Ins. Co.*, 297 F.2d 697 (7th Cir.1962) and *Pearl Assur. Co. v. School Dist. No. 1*, 212 F.2d 778 (10th Cir.1954). These authorities are persuasive but not controlling upon this court. In any event, the court finds both cases to be inapposite to the question presented in this matter, which relates to the language in State Farm's policy. *Wisconsin Screw Co.* concerns primarily the calculation of the amount payable for the fire loss there and the availability of pre-judgment interest. *Id.* at 698–701. The parties in *Pearl Assur. Co.* were also concerned with pre-judgment interest and the date on which liability of the insurer matured. *Id.* at 781–783.

C. Applying State Farm's "Reasonable" Time Period to Present Case.

■ Assuming, *arguendo*, that State Farm is correct in its interpretation that there is no absolute obligation under the "Loss Payment" provision of its policy to

---

5. If this is the construction State Farm would have the court give to the subject language, a simple re-writing is all that is required, not the disastrous effects suggested in State Farm's Memorandum of Authorities. The parties' conflicting interpretations of the language, as written, leads the court to conclude that there is an ambiguity in the subject language which requires that the language be construed most strongly against the drafter, State Farm. *See Brander v. Nabors*, 443 F.Supp. 764 (N.D.Miss.), *aff'd*, 579 F.2d 888 (5th Cir.1978).

6. There is no dispute in this case that State Farm received the plaintiffs' proof of loss form on March 27, 1985 and their personal property inventory forms on April 9, 1985. According to the Reeces' interpretation of the relevant lan-

guage, State Farm was obliged either to make payment or to communicate its denial of the Reeces' claim no later than June 8, 1985 (60 days after receipt of the personal property inventory form). No denial was in fact communicated to the Reeces until August 21, 1985, more than 130 days after State Farm received the Reeces' personal property inventory forms. If the 60–day period began running immediately upon State Farm's receipt of the plaintiffs' personal property inventory forms, then clearly State Farm did not meet its obligation to make payment or deny the claim within the mandated time period. Additionally, State Farm's position that a reasonable time period be permitted suggests that the "easy to read" policy could be drafted more plainly.

complete an investigation within 60 days of its receipt of a proof of loss from the insured, this conclusion is unavailing in the present case. The court remains of the opinion that the case *sub judice* is one in which State Farm was able to but did not complete its investigation within 60 days of its receipt of the insureds' proof of loss documents.

■ The court agrees with State Farm's contention that the insureds have a duty to submit to examination under oath as often as State Farm *reasonably* requires. The court finds, however, that a second examination of the Reeces was not reasonably required based on the evidence before this court. As to the suggestion that the Reeces should have permitted State Farm to examine their son, John Reece, the court expresses no opinion on this issue. There is no language in the subject insurance policy which places any obligation whatsoever on the insured to permit or encourage examination by the insurer of persons who are not parties to the insurance contract. The duty of cooperation applies only to the named insureds. *See State Farm Mut. Auto. Ins. Co. v. Commercial U. Ins.*, 394 So.2d 890 (Miss.1981); *Rampy v. State Farm Mut. Auto. Ins. Co.*, 278 So.2d 428 (Miss.1973); *Employers Mut. Cas. Co. v. Ainsworth*, 249 Miss. 808, 164 So.2d 412 (1964).

If additional information is brought forth at trial to substantiate the reasonableness of a second examination of the Reeces before the denial of their claim, then the court may be required to reassess its ruling on the issue of extra-contractual damages. State Farm may move for a directed verdict at trial. At this juncture, the court is not persuaded that State Farm had an arguable reason for failing to notify the Reeces of the denial of their claim within 60 days of the receipt of the plaintiffs' proof of loss forms.

Nothing in State Farm's ultimate denial letter of August 21, 1985 suggests that State Farm relied upon any additional information obtained in the later examinations which was not already known to State Farm on or about June 8, 1985. In fact, it is not disputed that State Farm already had in its possession an expert's report which suggested an incendiary origin for the fire when the Reeces declined to make themselves available for a second examination under oath prior to June 8, 1985. State Farm also concedes that it obtained information pertinent to the Reeces' financial condition in their first examination under oath.

As the court has already ruled, the evidence of arson already constituted an arguable reason for State Farm to deny the Reeces' claim and shielded State Farm from liability for punitive damages for denying the claim. The court finds no arguable reason for State Farm's delay in communicating its denial to the insureds when State Farm already had good and sufficient information upon which to base its denial. Such delay cannot be justifiably characterized as based on a *reasonable* period of investigation by State Farm. Again, in no way does State Farm argue that the Reeces' failure to submit to a second examination under oath prior to June 8, 1985 prevented State Farm from communicating its decision on the fire loss claim within 60 days. State Farm merely argues that it desired to continue its investigation for some indefinite "reasonable period of time" before it made a final decision.

Whether State Farm's intentional delay in communicating its decision to the insureds represented "gross, callous or wanton conduct", *State Farm Fire and Casualty Co. v. Simpson*, 477 So.2d 242, 250 (Miss.1985), is a matter on which the court is not prepared to preclude the plaintiffs from offering proof at trial. The court remains cognizant of the standard of proof which plaintiffs must satisfy: "[T]hey must show at a minimum that the [delay] was (a) a wanton or shamefully [sic] wrong, or (b) outrageous conduct, or (c) an act done maliciously or intentionally, or (d) an act done with such gross negligence or recklessness as to show a callous indifference to the consequences." *Davidson, supra*, at 511 (citations omitted). The court is not willing to conclude at this point, however, that the delay in State Farm's

notification to the Reeces that their claim was being denied was simply an "honest mistake." *Cf. Harrison v. Benefit Trust Life Ins. Co.*, 656 F.Supp. 304, 308 (N.D. Miss.1987).

While the court may agree with State Farm that there is no absolute contractual obligation on the insurer to complete *every* investigation within 60 days, in *this case* the court finds that State Farm was in a position to do so and simply did not. Whether there are other circumstances which might justify a delay of more than 60 days in the rendering of a decision by State Farm is not a concern of this court. The court is called to rule only on State Farm's actions with regard to these plaintiffs.

### D. Application of *Tutor v. Ranger Ins. Co.*

In this connection, State Farm places much reliance on the recent decision in *Tutor v. Ranger Insurance Co.*, 804 F.2d 1395 (5th Cir.1986), arguing that delay alone cannot justify punitive damages. *Tutor* may be distinguished from this case, because in *Tutor* the insurer did not ultimately deny coverage but merely delayed payment based on a dispute over the amount due under the policy. The Fifth Circuit plainly stated: "We stress that Ranger never denied coverage under the policy, and we would be faced with a different case had Ranger denied coverage...." *Id.* at 1399. There is a clear contrast between a delay based on a good faith effort to reach agreement over the cash value of a log skidder, as seen in *Tutor*, and a delay based on the insurer's attempt to obtain additional information when colorable grounds for denial have already been discovered. In the case at bar, State Farm never disputed the valuation of the Reeces' home under their homeowners' policy. State Farm merely sought to obtain additional grounds for denying liability after having already conducted an extensive investigation into the Reeces' possible motives for arson and opportunity to commit the act of arson.

The court holds that plaintiffs, therefore, are not estopped from arguing that State Farm should have communicated its decision within 60 days of its receipt of the plaintiffs' proof of loss and personal property inventory forms. The court emphasizes that this is not a case where the insureds were merely required to wait before their claim was ultimately paid. If it were, the court would be more inclined to excuse State Farm's delay in notifying the insureds of its decision. But where the insured had in its possession good evidence of possible arson at least as early as March 12, 1985 and delayed giving any notice of denial to the insured until August 21, 1985, the court is of the opinion that proof of any damages resulting from that delay should not be foreclosed by a summary ruling. Plaintiffs will be afforded an opportunity to prove any damages stemming from this delay.

Additionally, the court notes that unlike in *Tutor*, where punitive damages alone were sought, plaintiffs here seek extra-contractual damages for emotional distress. Such damages must always be supported by competent evidence. *See Jones v. Benefit Trust Life Ins. Co.*, *supra*, at 1548. If plaintiffs are unable to prove extra-contractual damages, the court is of the opinion that these damages may not properly be submitted to the jury. *See Pioneer Life Ins. Co. of Illinois v. Moss*, 513 So.2d 927, 931 (Miss.1987) (Robertson, J. specially concurring).

Implicit in the court's ruling herein is the fact that the plaintiffs must prevail on the underlying contractual claim. If the insureds do not prevail on the contractual claim, then no extra-contractual damages will lie. Quite simply, if State Farm is not liable for any payment under the policy of insurance, then State Farm did not breach the insurance contract in denying plaintiffs' claim and no extra-contractual damages would be available to plaintiffs. *See Aetna Cas. & Sur. Co. v. Day*, 487 So.2d 830, 833–834 (Miss.1986); *Southern United Life Ins. Co. v. Caves*, 481 So.2d 764, 769 (Miss.1985); *State Farm Fire and Cas. Co. v. Simpson*, 477 So.2d 242, 252 (Miss.

1985); *Blue Cross and Blue Shield of Miss., Inc. v. Campbell,* 466 So.2d 833, 843 (Miss.1984).

Accordingly, State Farm is not entitled to judgment as a matter of law on the plaintiffs' claim for extra-contractual damages. Fed.R.Civ.P. 56(c). The court is of the opinion that State Farm's motion to reconsider on this claim should be denied.

A separate order will be entered by the court.