Bobby L. GATES and Pamela C.
Gates, Plaintiffs,

v.

STATE FARM GENERAL INSURANCE
COMPANY, Defendant.

Civ. A. No. J89-0588(B).

United States District Court,
S.D. Mississippi,
Jackson Division.

July 3, 1990.

Daniel H. Fairley, Wells Wells Marble and Hurst, Jackson, Miss., for plaintiffs.

Michael K. Randolph, David M. Ott, Hattiesburg, Miss., for defendant.

## MEMORANDUM OPINION AND ORDER

BARBOUR, Chief Judge.

This cause is before the Court on Motion of Plaintiffs to Strike and for Partial Summary Judgment and on Motion of Defendant for Summary Judgment or, in the Alternative, Partial Summary Judgment. In addition, Defendant has requested sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure. Having reviewed these Motions together with supporting and opposing memoranda and other documents, the Court is of the opinion that the Motion of Defendant should be granted, the request for Rule 11 sanctions should be denied, and the Motion of Plaintiffs should be denied as moot.

## I. FACTS AND PROCEDURAL HISTORY

This case concerns an insurance policy ("the Policy"), number 24–95–8287–SG, issued by Defendant State Farm General Insurance Company, under which the home of Plaintiffs Bobby and Pamela Gates was insured against fire loss.

The Policy was in full force and effect on June 27, 1989, when Plaintiffs' home was destroyed by fire. On June 29, 1989, Bill Griffin, an adjuster for Defendant, met with Bobby Gates regarding his claim. On July 11, Defendant received the Personal Property Inventory forms, and on July 12, Defendant received the Sworn Statement in Proof of Loss from Plaintiffs.

By separate letters to Mr. and Mrs. Gates dated August 18, 1989, Defendant through its attorneys requested that Plaintiffs submit to an examination under oath, as provided by the Policy, on August 30, 1989, and that at the time of the examination they bring with them certain documents concerning the loss and financial matters. At the request of Plaintiffs, the examination was postponed until September 20, 1989. Due to conflicts with the schedule of Plaintiffs' attorney, the examination was again postponed until October 3, 1989. At the examination on October 3, Plaintiffs were queried concerning the fire loss and their financial situation and they were asked limited general questions.

On October 10, 1989, Plaintiffs filed suit against Defendant in the Chancery Court of Lincoln County, Mississippi, alleging, *inter alia*, that Defendant had

(1) intentionally refused and failed to pay Plaintiffs the proceeds of the Policy,

(2) intentionally delayed the investigation of the fire to attempt to coerce Plaintiffs into accepting a settlement less than was due under the Policy,

(3) subjected Plaintiffs to sworn inquiry about matters of a personal and sensitive nature, and

(4) refused to abide by and intentionally breached the terms of the Policy.

Plaintiffs demanded the following relief:

(1) an injunction ordering Defendant to pay the proceeds of the Policy,

(2) actual damages of $150,000.00,

(3) punitive damages of $1,000,000.00,

(4) attorney's fees and costs, and

(5) general relief.

On October 17, 1989, Defendant properly removed the case to this Court pursuant to 28 U.S.C. § 1441. The Court has jurisdiction of this case pursuant to 28 U.S.C. § 1332 (diversity). Plaintiffs are residents of Mississippi. Defendant is an Illinois corporation with its principal place of business in Illinois.

After completing its investigation, Defendant determined that Plaintiffs' claim for coverage should be granted. On November 1, 1989, Defendant transmitted the final payment under the Policy of $25,796.74 to Plaintiffs' attorney.

On November 29, 1989, Defendant filed its Answer and Affirmative Defenses. In-

cluded within this pleading was an affirmative request for attorney's fees, costs, and expenses pursuant to Rule 11 of the Federal Rules of Civil Procedure.

On January 30, 1990, Plaintiffs filed their Motion to Strike and for Partial Summary Judgment seeking to have the request of Defendant for Rule 11 sanctions stricken from the Answer pursuant to Rule 12(f) of the Federal Rules of Civil Procedure and seeking summary judgment on the Rule 11 claim. On March 1, 1990, Defendant filed its Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## II. CONCLUSIONS OF LAW

The Court will consider initially the Motion of Defendant and then the Motion of Plaintiffs.

### A. *Motion of Defendant*

According to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment shall be entered in a case "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Rule 56(e) further provides that

[w]hen a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

The Court is of the opinion that Defendant has demonstrated the absence of a genuine issue of material fact with regard to Plaintiffs' claims against it and that Plaintiffs in their response have failed to successfully controvert that showing.

The Court notes initially that Plaintiffs' claims for payment of proceeds due under the Policy were rendered moot by payment of the claim on November 1, 1989. The Court must consider, therefore, whether there exist genuine issues with regard to whether Defendant wrongfully delayed payment under the Policy, wrongfully and unreasonably sought unnecessary personal information from Plaintiffs, attempted to coerce Plaintiffs into accepting a lower amount than was due them under the Policy, and/or in any way violated the terms of the Policy.

### 1. Wrongful Delay of Payment

■ The Policy provides as follows with respect to payment for losses covered by the Policy:

**Loss Payment.** We [Defendant] will adjust all losses with you. We will pay you unless some other person is named in the policy or is legally entitled to receive payment. Loss will be payable 60 days after we receive your proof of loss and:

a. reach agreement with you;

b. there is an entry of a final judgment; or

c. there is a filing of an appraisal award with us.

Policy at 12. The Policy provides in relevant part with regard to a claimant's duties after a loss as follows:

*Your Duties After Loss.* After a loss to which this insurance may apply, you shall see that the following duties are performed: .

.    .    .    .    .

d. as often as we reasonably require:

.    .    .    .    .

(2) provide us with records and documents we request and permit us to make copies;

(3) submit to examinations under oath and subscribe the same....

Policy at 10. Finally, the Policy provides with respect to lawsuits by claimants that "[n]o action shall be brought unless there has been compliance with the policy provisions." Policy at 12.

Plaintiffs assert that Defendant violated the terms of the policy by failing to pay Plaintiffs' claim within 60 days after Defendant received proof of loss from Plaintiffs. In advancing this argument, Plaintiffs rely upon *Reece v. State Farm Fire & Casualty Co.*, 684 F.Supp. 140 (N.D.Miss. 1987), in which the court construed a 60-day payment provision identical to that in the instant case. In *Reece*, the plaintiffs had submitted their proof of loss on March 27, 1985, and their personal property inventory forms on April 9, 1985. Thus, the 60-day period expired on June 8, 1985. Denial of payment was not communicated, however, until August 21, 1985, over 130 days after the defendant had received the plaintiffs' personal property inventory forms. Following well-settled law that an insurance contract is to be strictly construed against the drafter, *Brander v. Nabors*, 443 F.Supp. 764 (N.D.Miss.), *aff'd*, 579 F.2d 888 (5th Cir.1978), the *Reece* court found that the defendant had not met its obligation to make or deny payment within the contractually mandated time period. 684 F.Supp. at 144. The *Reece* court further held that the fact that plaintiffs had failed to appear for a second examination under oath scheduled for June 8, 1985, did not estop them from arguing that the defendants had not complied with the 60-day provision. The court noted in so holding that the plaintiffs had previously been examined under oath by the defendant in April 1985, that they had no reason to suspect that the defendant would deny their claim due to failure to appear at the second examination, and that there was no suggestion by defendant that the failure of the plaintiffs to appear at the second examination formed the basis for the delay of the claims decision.

Plaintiffs in the instant case rely upon *Reece* for two propositions: (1) that the 60-day payment provision in the insurance contract should be strictly construed against Defendant as the insurer, and (2) that the fact that Plaintiffs in this case delayed the taking of their examination under oath should not relieve Defendant from its requirement to pay or deny within 60 days.

This Court agrees with the first proposition. In fact, if insurers operating under such provisions were not held to the 60-day period of such provisions, the limitation period itself would become meaningless.

The Court does not agree with Plaintiffs, however, that an insurer is held to the 60-day period even if a claimant delays a reasonable investigation of the claim by the insurer. As noted *supra*, the decision of the *Reece* court that the plaintiffs were not estopped from arguing the application of the 60-day period was based explicitly upon the fact that the insurer had failed to show that its delay in communicating the claims decision was based upon the failure of the plaintiffs to submit to the second examination. In fact, the court recognized a distinction between the facts before it and a reasonable request by an insurer for an examination of a claimant:

> The court agrees with State Farm's contention that the insureds have a duty to submit to examination under oath as often as State Farm *reasonably* requires. The court finds, however, that a second examination of the Reeces was not reasonably required based on the evidence before this Court.

684 F.Supp. at 150 (emphasis in original). Moreover, the *Reece* court made clear that it was not reaching the question of whether an insurer would be held to the 60-day period in the face of a claimant's failure to comply with a *reasonable* investigation by the insurer:

> While the court may agree with State Farm that there is no absolute contractual obligation on the insurer to complete *every* investigation within 60 days, in *this case* the court finds that State Farm

was in a position to do so and simply did not. Whether there are other circumstances which might justify a delay of more than 60 days in the rendering of a decision by State Farm is not a concern of this court. The court is called to rule only on State Farm's actions with regard to these plaintiffs.

*Id.* at 151 (emphasis in original).

In the instant case Defendant, more than 20 days before the expiration of the 60-day period, sought to schedule an initial examination under oath which itself would have taken place more than 10 days before the expiration of the period. It was Plaintiffs and their attorney who delayed the taking of the examination until October 3 and who filed suit against Defendant 7 days after the examination. Certainly under Mississippi law the taking of an initial examination under oath by an insurer is presumptively reasonable. *See Allison v. State Farm Fire & Casualty Co.*, 543 So.2d 661, 663 (Miss.1989) (citing a number of Mississippi cases finding clauses authorizing insurers to conduct investigations under oath to be reasonable and valid). Moreover, the Court finds that the taking of an initial examination under oath in the instant case was *de facto* reasonable, particularly given information available to Defendant regarding delinquency of Plaintiffs on certain loans and given the fact that the deputy fire marshal had been unable to conclusively determine whether the fire was accidental or incendiary. *See* Exhibit 2 to Motion of Defendant for Summary Judgment at ¶ 7; Plaintiffs' Memorandum in Opposition to Motion for Summary Judgment at 4–5. In *Reece*, it was apparent that the insurer could have *denied* the claim, as it eventually did, without the benefit of the second examination. 684 F.Supp. at 150. In the instant case, however, Defendant was justified, before reaching its eventual decision to *pay* the claim, in investigating certain aspects of Plaintiffs' financial background which had reasonably given it pause. Thus, in keeping with the *Reece* opinion, the Court finds that the taking of an initial examination under oath of Plaintiffs by Defendant was reasonably required and therefore that Defendant cannot be penal-

ized for failure to make or deny payment within the 60-day period, since the delay of the examination beyond the expiration of the period was attributable solely to the actions of Plaintiffs and their attorney. The Court notes that to hold insurers operating under similar 60-day provisions to strict compliance with such periods regardless of the reasonable requirements of investigation would make it possible for claimants to intentionally and improperly delay investigation of their claims, thus forcing insurers to choose between making claims decisions without adequate information and violating the terms of the policy.

Plaintiffs' contentions that Defendant was bound by the alleged representations of its attorney that Plaintiffs would receive payment under the policy within three days of the examination under oath are without merit. Plaintiffs have presented no evidence or authority to the effect that the attorney for Defendant had authority to enter into or modify insurance contracts on behalf of Defendant.

2. Wrongful and Unreasonable Seeking of Personal Information

█ Under the clear terms of the Policy as quoted *supra*, Defendant is entitled to "reasonably require" the production of information from claimants through examinations under oath and production of records and documents. Plaintiffs have failed to demonstrate that the information requested from Plaintiffs at the examination was not reasonably required by Defendant to conduct its investigation. The Court specifically finds that inquiries during the examination about a former marriage and church contributions, which Plaintiffs find objectionable, were neither unrelated to the inquiry of Defendant nor unreasonable. Moreover, the Court finds that the documents which Defendant requested to be produced were neither so personal nor so detailed as to make the request unreasonable.

3. Coercion into Accepting Lower Amount

Plaintiffs have produced absolutely no evidence in support of their claim that De-

fendant delayed investigation of Plaintiffs' loss in order to attempt to coerce them into accepting a lesser amount than was due them under the policy, nor have they produced evidence of any type of coercion of Plaintiffs by Defendant.

In short, Plaintiffs have failed to demonstrate a genuine issue with regard to any of their claims against Defendant, and they have failed to make a showing sufficient to establish that Defendant has breached any provision of the Policy or that Defendant has acted improperly or wrongfully with regard to the handling of Plaintiff's claim. The Motion of Defendant for Summary Judgment as to the contractual claims and claims for extra-contractual and punitive damages will therefore be granted.

## B. Motion of Plaintiffs

Plaintiffs seek to strike the claim of Defendant for Rule 11 sanctions pursuant to Rule 12(f) of the Federal Rules, which states that "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter" may be stricken from a pleading. Plaintiffs also seek summary judgment on the Rule 11 claim. The Court notes that Plaintiffs' claims for relief under Rule 12(f) are not timely filed, in that the Motion was not filed within 20 days of service of the Answer upon Plaintiffs, but that the Court may strike a matter pursuant to the rule on its own initiative at any time. However, the Court elects instead to finally rule on the Rule 11 claim at this time, thus rendering moot both the request to strike and the request for partial summary judgment.

▪ Rule 11 of the Federal Rules of Civil Procedure states in relevant part:

The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper

purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.... If a pleading, motion, or other paper is signed in violation of this rule, the court, upon motion or upon its own initiative, shall impose upon the person who signed it, a represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the pleading, motion, or other paper, including a reasonable attorney's fee.

Defendant seeks the imposition of sanctions against Plaintiffs and their attorney for "the continued prosecution of this lawsuit in Federal Court." Answer and Affirmative Defenses at 5. Plaintiffs contend that this request goes against the holding of the Fifth Circuit that Rule 11 does not impose a "continuing obligation" of acceptable behavior on the part of a litigating party or attorney but instead envisions the evaluation of "an attorney's conduct at the time a 'pleading, motion, or other paper' is signed...." *Thomas v. Capital Sec. Serv., Inc.*, 836 F.2d 866, 874 (5th Cir.1988). This Court finds, however, that despite the use of the phrase "continued prosecution" by Defendant in its request for Rule 11 sanctions, it is evident that Defendant thereby sought sanctions for the filing of the original complaint in state court. The Fifth Circuit, in a post-*Thomas* decision, has explicitly recognized the right of a defendant to seek Rule 11 sanctions in a case removed from state court where the plaintiff fails to rectify a faulty complaint:

We would observe that Rule 11 should not countenance sanctions for pleadings filed in state court in a case later removed to federal court *unless, their deficiency having been promptly brought to the attention of the pleader after removal, he (or she) refuses to modify them to conform to Rule 11.*

*Foval v. First Nat'l Bank of Commerce in New Orleans*, 841 F.2d 126, 130 (5th Cir. 1988) (emphasis added). Thus, the request by Defendant for Rule 11 sanctions is tech-

nically proper and, if Plaintiffs' Complaint was in fact filed in violation of Rule 11, should be granted.[1]

The Court finds, however, that the Complaint was not filed in violation of Rule 11. The Court is of the opinion that Plaintiffs' argument that Defendant was required by the insurance policy to pay or deny Plaintiffs' claim within 60 days was made in good faith, given the fact that the *Reece* court had declined to decide whether or when an insurer might decline to make a decision on a claim within 60 days where a provision identical to the one in the instant case applies. The Court is also of the opinion that Plaintiffs have argued in good faith, though erroneously, that the investigation into their affairs was overly personal and unreasonable.

IT IS THEREFORE ORDERED that the Motion of Defendant for Summary Judgment or, in the Alternative, Partial Summary Judgment be granted. All of Plaintiffs' claims are hereby dismissed with prejudice.

IT IS FURTHER ORDERED that the request of Defendant for sanctions under Rule 11 be denied. Plaintiffs' Motion to Strike and for Partial Summary Judgment is thereby rendered moot.

SO ORDERED.

---

1. Plaintiffs' contention that the request of Defendant for Rule 11 sanctions should not be considered because not presented in a separate motion is without merit. In *Lenoir v. Tannehill,* 660 F.Supp. 42 (S.D.Miss.1986), this Court specifically held that a request for Rule 11 sanctions could not be presented as a counterclaim. In the instant case the original request for Rule 11 sanctions, though part of the answer, was not a counterclaim. The statement of this Court in *Lenoir* that "Rule 11 by its express terms only permits an attorney procedurally to raise a claim for sanctions through a motion," *id.* at 42, was not meant to imply that a request for Rule 11 sanctions may never be raised other than through a separate motion, particularly where, as here, the request for sanctions was filed after removal to comply with *Foval, supra.*