**CERTAIN INTERESTED UNDERWRITERS AT LLOYDS, Plaintiff,**

**Tupelo Public School District, Tupelo, Mississippi, Defendant,**

v.

**GULF NATIONAL INSURANCE COMPANY, Third Party Defendant.**

No. 1:92CV317–S–D.

United States District Court, N.D. Mississippi, Eastern Division.

Sept. 22, 1995.

---

**5.** 28 U.S.C. § 1367(d) alleviates any concerns pertaining to the statute of limitations.

Robert Fenet, Elizabeth B. Hollins, Woodley, Williams, Fenet, Palmer, Boudreau & Norman, Lake Charles, LA, Robert K. Upchurch, Holland, Ray & Upchurch, P.A., Tupelo, MS, for Plaintiff.

Dennis W. Voge, Stephen H. Morris, Mitchell, Voge, Beasley and Corban, Tupelo, MS, for Defendant/Third Party Plaintiff Tupelo School District.

Joseph Leray McNamara, McNamara, Kelly & Welsh, Jackson, MS, for Third Party Defendant Gulf National Insurance Co.

## OPINION

SENTER, Chief Judge.

The plaintiffs, Certain Interested Underwriters at Lloyds (hereinafter "Lloyds"), filed this declaratory judgment action against the Tupelo School District (hereinafter "Tupelo") seeking a determination of their liability as reinsurers of an excess loss policy between Tupelo and Gulf National Insurance Company (hereinafter "Gulf"). In response, Tupelo filed a third party complaint against Gulf seeking reimbursement for expenses paid under Tupelo's self-insured plan. Both Lloyds and Gulf have filed motions for summary judgment against Tupelo, and Tupelo has filed a cross-motion for summary judgment against Gulf and Lloyds. All parties have agreed that there are no issues of material fact and that the court may properly resolve this action as a matter of law.

## FACTS

In 1989, Tupelo adopted a self-insured medical plan for its school district employees and their dependents. Tupelo then insured the plan itself through the purchase of excess loss indemnity insurance from Gulf. The policy between Gulf and Tupelo provided coverage for medical benefits above the $30,000.00 specific deductible per person, and aggregate coverage for losses exceeding $554,396.00. Gulf subsequently obtained reinsurance for its risk through Lloyds. The effective dates for the two policies were identical and ran from September 1, 1990 to September 1, 1991.

This case arose when a teacher covered under Tupelo's plan was hospitalized from August 12, 1991, until September 13, 1991. The teacher's medical expenses incurred during the policy period totaled $78,831.30. After Tupelo's policy with Gulf had expired on September 1, Tupelo paid these expenses and then requested reimbursement from Gulf. Gulf denied payment of the claims, citing Tupelo's failure to comply with the terms of the policy. The relevant provisions of the policy stated:

> The Company will pay you a percentage of the amount by which the specific losses you have paid under your Employee Benefit Plan exceed the specific deductible amount stated in your Schedule of Insurance [$30,000].
>
> * * * * * *
>
> Specific losses means the total amount of money *you have actually paid during your policy period* to, or on behalf of, any one person covered under your Employee Benefit Plan. Such payments must have been made for covered expenses which were incurred after the effective date of your policy, or during the 12 month period

immediately prior to such effective date. [Emphasis added].

Gulf asserted that because Tupelo did not pay the claims within the policy period, Gulf was relieved of any duty to reimburse Tupelo. Tupelo disputed this argument and replied that the language of the policy was ambiguous and that Gulf's construction of the disputed provision rendered the policy unconscionable. As a result of this conflict, Lloyd's brought this action for a declaration of its liability under the reinsurance policy, and Tupelo filed a third-party complaint against Gulf.

## DISCUSSION

██ The first issue that must be addressed involves Gulf's assertion that it should not be a party within this action because Tupelo improperly utilized Federal Rule of Civil Procedure 14. Pursuant to FRCP 14(a), a defending party may implead a third party if the third party's liability depends "upon the outcome of the main claim," and is derivative or secondary to the original defendant's liability. *Southern Mortg. Co. v. O'Dom*, 699 F.Supp. 1223, 1225 (S.D.Miss.1987) (*quoting United States v. Joe Grasso & Son, Inc.*, 380 F.2d 749, 751 (5th Cir.1967)). Gulf argues that the nature of a declaratory judgment action cannot render Gulf secondarily liable within Lloyd's claim against Tupelo, and therefore, Gulf should not be included in this action. However, it has been generally held that FRCP 14 should be liberally construed so as to promote judicial efficiency, especially with regard to declaratory judgments. *See Bernstein v. Crazy Eddie, Inc.*, 702 F.Supp. 962, 987 (E.D.N.Y. 1988); *State Farm Mutual Automobile Ins. Co. v. Mid–Continent Casualty Co.*, 518 F.2d 292, 296 (10th Cir.1975) (holding that all interested parties should be joined in declaratory judgment action). The rule's general purpose is to adjudicate interrelated matters in one litigation, so as to obtain consistent and fair results for the parties and avoid duplication of effort for the courts. *See American Fidelity and Casualty Co. v. Greyhound Corp.*, 232 F.2d 89, 92 (5th Cir. 1956). Coupled with this intention is the rule that declaratory judgments should completely dispose of a controversy. *State Farm Mutual Automobile Ins. Co.*, 518 F.2d at 296. Gulf's absence in this action would raise the threat of future, continued litigation, and render the court unable to fully adjudicate the entire controversy. Therefore, the court holds that the third party complaint satisfies the requirements of FRCP 14 and is consistent with the rule's intended purpose.

██ The next issue involves the disputed policy provisions. The interpretation of an insurance policy is a question of law for the court to decide when the meaning of the terms is clear and unambiguous. *Reece v. State Farm Fire & Cas. Co.*, 684 F.Supp. 140, 143 (N.D.Miss.1987); *Aero International, Inc. v. United States Fire Ins. Co.*, 713 F.2d 1106, 1109 (5th Cir.1983). Because federal jurisdiction is premised upon diversity of citizenship, the substantive law of Mississippi governs the policy's interpretation. *Gladney v. Paul Revere Life Ins. Co.*, 895 F.2d 238, 241 (5th Cir.1990). Although Lloyd's claim is founded upon its policy with Gulf, the court must first examine the agreement between Gulf and Tupelo.

The applicable provisions of the policy have been set forth above. The actual dispute is whether liability under the policy arose on a "claims paid" or a "claims incurred" basis. Tupelo contends that it was unaware of its need to actually pay the claims within the policy period, and that a more reasonable interpretation is that the policy merely required the claim to be incurred during the coverage period.

██ While it is apparent that the policy between Lloyds and Gulf was on a claims paid basis, Gulf's agreement with Tupelo was not so well articulated. However, this does not necessarily render Gulf's policy with Tupelo ambiguous. The Mississippi Supreme Court has held that contractual provisions are ambiguous when they are susceptible to two reasonable interpretations, or when various provisions are in direct conflict to one another, or when terms are unclear or of doubtful meaning. *Dennis v. Searle*, 457 So.2d 941, 945 (Miss.1984). In analyzing the policy, the court may neither create an ambiguity where none exists, nor make a new

contract for the parties. *Brander v. Nabors,* 443 F.Supp. 764, 769 (N.D.Miss.1978). Similarly, a court should not strain to find an ambiguity, but must rely on the clear, precise language of the policy provisions. *Id.*

■ The policy's language clearly states that claims must have been paid during the policy period to qualify for reimbursement. Tupelo admits this fact, but asserts that the policy, when read as a whole, is misleading. This argument is unpersuasive, however. Although the policy did define when a claim was "incurred," this did not change the fact that the policy was on a "claims paid" basis. The "incurred" language was included to explain one aspect of the scope of the coverage, and could only confuse an insured when read out of context. Thus, the court finds that the policy's terms are clear, and when read as a whole do not create an ambiguity as to the nature of the coverage.

■ Another potential avenue for interpreting the policy in favor of Tupelo was contained within the application for insurance. The policy's requirements as stated in the application are less clear than the language used in the actual policy, and it is plausible that Tupelo thereby misunderstood the application's reference to the scope of the coverage.[1] However, only the language of the policy itself governed the policy's scope, not the application. *See Interstate Life and Accident Insurance v. Flanagan,* 284 So.2d 33, 37 (Miss.1973). In addition, Mississippi case law is clear that an insured may not neglect to acquaint itself with the terms and conditions of a policy. *Gulf Guaranty Life Ins. Co. v. Kelley,* 389 So.2d 920, 922 (Miss. 1980). A sophisticated party such as Tupelo had a duty to read the final policy and know the full ramifications of the agreement it ultimately signed. Tupelo had established a committee to negotiate and oversee its insurance plans. This group was chaired by the district's assistant superintendent and was comprised of teachers and school district employees. The policy was only seven pages long and was not confusing or complex. In such an instance, Tupelo is charged with the responsibility of reading and fully understanding its policy provisions.

■ The court's duty in this action is to construe the policy in a manner that effectuates the party's intentions. *Western Line Consol. School Dist. v. Continental Cas. Co.* 632 F.Supp. 295, 302 (N.D.Miss.1986) (*citing Monarch Insurance Company of Ohio v. Cook,* 336 So.2d 738, 741 (Miss.1976)). The foundation for determining this intent must be gleaned from the express language of the policy. Under Mississippi law, insurance contracts must be construed exactly as written when they are clear and unambiguous, regardless of an apparently harsh consequence to the insured. *See Foreman v. Continental Cas. Co.,* 770 F.2d 487, 489 (5th Cir.1985). Because the court has found that the policy language is clear and unambiguous, the law requires that the parties adhere to the agreement's mandates. Therefore, Gulf is not liable for any expenses Tupelo ultimately incurred that Tupelo did not pay within the policy period.

■ The remaining concern is whether the enforcement of the policy renders the agreement unconscionable. The court addressed the issue of unconscionability, as defined by the Mississippi Supreme Court, in *York v. Georgia–Pacific Corp.,* 585 F.Supp. 1265 (N.D.Miss.1984). An unconscionable contract is one "such as no man in his senses, and not under delusion, would make on the one hand, and as no honest and fair man would make on the other." *Id.* at 1278 (*citing Terre Haute Cooperage v. Branscome,* 203 Miss. 493, 35 So.2d 537, 541 (1948)). The court does not believe that this policy satisfies the applicable standards for unconscionability. The policy provisions are not oppressive, and Tupelo did not establish a lack of voluntariness, the use of inconspicuous print or complex legalistic language, or a lack of opportunity to study the contract and inquire about its terms. *Id.* Furthermore, as Gulf pointed out in its reply brief, the policy obligated Gulf to pay for medical expenses incurred by Tupelo's employees for a one year

---

1. On the application for insurance, Tupelo marked the coverage option that stated: "[p]aid during policy period; incurred during policy period.... " Tupelo asserts that such language cannot be equated with "paid during policy period *and* incurred during policy period."

period prior to the effective date of the policy. Tupelo thereby gained the benefit of coverage for claims that were merely paid but not incurred during the policy period. Such a provision is consistent with the nature of a "claims paid" policy, and lends further credence to a finding that the policy was neither ambiguous nor unconscionable.

 In conclusion, the court finds that it must give effect to the clear language of Gulf's policy with Tupelo. Therefore, Gulf is not liable for the insurance claims made by Tupelo, because the payment of the expenses fell outside the scope of the coverage period. As Lloyds' duty to indemnify Gulf is founded upon a separate, derivative policy, Lloyds' liability is contingent and does not arise if Gulf is not liable. Thus, Lloyds is also free from liability as an insurer in this action.

An order in accordance with this opinion shall be issued.

### FINAL JUDGMENT

Pursuant to an opinion filed contemporaneously herewith, it is ORDERED and ADJUDGED:

That the motion for summary judgment filed by Certain Interested Underwriters at Lloyds and Gulf National Insurance Company is well taken, and the requested declaratory judgment in favor of these parties is granted;

That the cross-motion for summary judgment filed by Tupelo Public School District is not well taken and is denied;

That Tupelo's claims for health care expenses were excluded from coverage pursuant to the policy between Gulf National and Tupelo, and therefore Gulf National is not liable for these claims;

That Lloyds is similarly not liable for these claims under the policy between Lloyds and Gulf National.

SO ORDERED.